# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TURNER-DUNN HOMES, INC., and others,<br><br>                         Debtors.<br><br>BCI BEBOUT CONCRETE, INC.,<br><br>                         Plaintiff,<br><br>vs.<br><br>TURNER-DUNN HOMES, INC., et al., and John Does 1-10,<br><br>                         Defendants.<br><br>ROBERT P. ABELE, Chapter 11 Trustee,<br><br>                         Third-Party Plaintiff,<br><br>vs.<br><br>SONORAN CONCRETE, LLC, an Arizona limited liability company; GALE CONTRACTOR SERVICES, a Florida corporation; CHAS ROBERTS AIR CONDITIONING, INC., an Arizona corporation; DEL MARTENSON DEVELOPMENT CORP., an Arizona corporation; TRUSSWAY, INC. WEST, an Arizona corporation; TRIPLE S FENCE CO., an Arizona corporation; RIGGS PLUMBING, LLC, an Arizona limited liability company; ALLIANCE LUMBER, LLC, an Arizona limited liability company; KAY CONSTRUCTION, INC., an Arizona corporation, PEAK CONSTRUCTION, INC., an Arizona corporation; DIVERSIFIED ROOFING CORP., an Arizona corporation; INTEGRATED STUCCO, INC., an Arizona corporation; MITCHELL ELECTRIC CO., INC., an Arizona corporation; A COMPANY PORTABLE RESTROOMS INC., an | Chapter 11<br><br>Case No. 4-06-bk-00961-JMM<br><br>(Jointly Administered With Case Nos.: 4-06-bk-00962-JMM; 4-06-bk-00963-JMM; 4-06-bk-00964-JMM; 4-06-bk-00965-JMM)<br><br>Adversary No. 4-06-ap-00106-JMM<br><br>**MEMORANDUM DECISION RE:**<br><br>**SUMMARY JUDGMENT (PARTIAL)**<br><br>**INVOLVING LIEN CLAIMANT**<br><br>**PACIFIC POOLS & SPAS, LLC** |

| | |
|---|---|
| 1 | Idaho corporation; JORDAN COMPANY; PACIFIC ) |
| | POOLS AND SPAS, LLC, an Arizona limited ) |
| 2 | liability company; MARICOPA MEADOWS ) |
| | HOMEOWNERS ASSOCIATION, an Arizona ) |
| 3 | corporation; SANDVICK EQUIPMENT & SUPPLY ) |
| | CO.; ESCO ELECTRIC WHOLESALE, INC.; RDC ) |
| 4 | CONSTRUCTION, INC., an Arizona corporation; ) |
| | DAYSPRING DEVELOPMENT, INC., an Arizona ) |
| 5 | corporation; OUTDOOR ENVIRONMENTAL ) |
| | SYSTEMS, INC aka OES, INC. dba RAINDANCE ) |
| 6 | SYSTEMS, an Arizona corporation; OHIO ) |
| | SAVINGS BANK, a federal savings bank; WRI ) |
| 7 | INVESTMENTS III, LLC, a Washington limited ) |
| | liability company; ANY UNKNOWN PARTIES IN ) |
| 8 | POSSESSION; UNKNOWN HEIRS AND ) |
| | DEVISEES OF ANY OF THE FOREGOING WHO ) |
| 9 | ARE DECEASED; and ABC ENTITIES 1-100, ) |
| | ) |
| 10 | <u>Third- Party Defendants</u> ) |

## INTRODUCTION - PROCEDURE AND METHODOLOGY

The Trustee has filed motions for partial summary judgment against numerous mechanics' and materialmens' lien claimants, challenging on "statutorily deficient" or "facially inadequate" grounds, the preliminary or final recorded lien documents of such lien claimants. In some cases, the lien claimants have also filed for partial summary judgment on the same issues.

For administrative convenience, the court has dealt with each lien claimant separately, although many of the same legal issues may affect other lien claimants as well. For that reason, many of the court's discussions and analyses may be repeated in whole or in part in its various decisions. Separating the decisions, as to each lien claimant, will enable both the court and each affected party to focus on particularized issues or fact differences, and will also facilitate appellate review.

When discussing the motions for summary judgment, the court will consider the points made against the particular lien claimant, and will include the totality of challenges to the lien, whether made by the Trustee, Ohio Savings Bank ("OSB"), or WRI Investments III, LLC ("WRI"), alone or in combination with one another.

In the end, the court will have addressed all challenges to the liens presented by the motions, and will rule on each legal point. In some instances, factual issues which were unforeseen at the outset may

present themselves, and if so, the court will indicate which issues are to be deferred for future hearings.

With one eye open to the appellate process, the court does not intend to combine any ruling with Rule 54(b) language, because, if further proceedings become necessary, the matter may not be ripe for final review until it is finally determined. This will save counsel and any reviewing court the expense and time in taking and deciding interlocutory appeals.

Another tool which the court will use is the attachment of an appendix to each decision, which will include each lien claimant's challenged lien documents. In this way, the parties, this court, and any reviewing court will have ready access to the operative documents involving each creditor. The appendix will also include the applicable Arizona statutes.

In some instances, a mechanic's lien claimant may have responded to the Trustee's motion and countered with its own summary judgment motion or partial summary judgment motion. When this procedure has occurred, the court will also rule on those issues unless the ruling is subsumed within the main decision.

To the extent that this decision requires refinement or further clarification, the court asks that the parties first convene a status hearing with the court prior to filing further pleadings on the decided issues. In that way, all parties can arrive at a unified method to further process the issues.

The court also understands that in many instances, the parties have not attached all or each of their claimed liens or notices. This is because all or each are essentially identical and a ruling on a particular legal issue is applicable across the board. Thus, the parties have selected samples for the court's review.

As noted from the bench, the court appreciates the excellent quality of the work product and arguments presented by all attorneys in this case. As all parties can appreciate, the issues presented were not simple ones, and the issues are important to the ultimate outcome of this case. For their efforts, the court thanks counsel in clearly focusing the issues.

## WHOM THIS DECISION AFFECTS

This decision involves the allegations made against Pacific Pools & Spas, LLC. In this case, the Trustee has not challenged Pacific Pools' liens. Only OSB has done so.

## ARIZONA LAW

In a bankruptcy case, property rights are determined by reference to state law. *Butner v. United States*, 440 U.S. 48 (1979). Bankruptcy courts have "core" jurisdiction to hear and determine issues involving the extent, validity, and priority of liens against an estate. 28 U.S.C. § 157(b)(2)(K).

Mechanics' and materialmen's liens are creatures of statute ARIZ. REV. STAT. § 33-981, *et seq*. Such statutes have existed in Arizona since statehood. *See, e.g. Arizona Eastern R.R. Co. v. Globe Hardware Co.*, 14 Ariz. 397, 400, 129 P. 1104, 1105 (1913) ("The primary object of our lien law is to insure to the laborer and materialman the payment of their accounts, and incidentally to protect the owner against the filing of liens by such persons against his property for services and material rendered and furnished the original contract."); *see also* CIVIL CODE 1913, § 3639. They exist principally to protect mechanics, materialmen, and those who furnish labor or supplies to another's land, thereby enhancing its value, from the dangers of non-payment. *See United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, 484, 4 P.3d 1022, 1027 (App. 2000); *Hayward Lumber & Inv. Co. v. Graham*, 104 Ariz. 103, 111, 449 P.2d 31, 39 (1968). These rights are "jealously protected," *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 515, 8 P.2d 256, 258 (1932), and when construing them the statutes must be liberally construed to effect their primary purpose. *See In re JWJ Contracting Co.*, 287 B.R. 501, 509-10 (9th Cir. BAP 2002) (construing Arizona's statutes), *aff'd*. 371 F.3d 1079 (9th Cir. 2004); *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 181, 370 P.2d 661, 664 (1962). While the statutes themselves appear, on the surface, to contain requirements which can be easily followed, the Arizona courts have held that substantial compliance with the statutes is sufficient to perfect a lien, provided that such compliance is not inconsistent with the legislative purpose. *See, e.g., Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 431, 561 P.2d 740, 755 (App. 1977); *Columbia Group, Inc. v. Jackson*, 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986); *MLM Constr. Co. v.*

4

*Pace Corp.*, 172 Ariz. 226, 229, 386 P.2d 439, 442 (App. 1992); *Peterman-Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank,* 2 Ariz. App. 321, 323, 408 P.2d 841, 843 (1966). While Arizona courts will, from time to time, describe the lien perfection process as one to be strictly followed, *see MLM Constr. Co.*, 172 Ariz. at 229, 836 P.2d at 442 (citing cases), the law's modern evolution has inevitably trended toward the substantial compliance model.

In addition to the protection of mechanics and materialmen, a secondary purpose of the law is to protect the property owner. *See, e.g., Arizona Gunite Builders, Inc. v. Continental Cas. Co.*, 105 Ariz. 99, 101, 459 P.2d 724, 726 (1969). The proper notification and recordation of a mechanic's lien serves to keep invalid or improper clouds on title from impairing an owner's rights to enjoy the benefits of ownership.

As for the specific procedure necessary for a lien claimant to perfect a lien, it must, within 20 days of first furnishing labor, professional services, materials, machinery, fixtures, or tools to the job site, prepare what is designated as a "preliminary twenty day notice" (hereinafter "preliminary 20-day notice") and serve it. ARIZ. REV. STAT. § 33-992.01. This statute was initially enacted in 1979, and has been amended five times since. Once the job is completed, the lien must be recorded within a specific period of time thereafter. ARIZ. REV. STAT. § 33-993.

Within each of these two statutes are contained numerous detailed requirements, some of which are at issue in the instant case. A copy of each of these statutes is included in the appendix to be filed.

<u>Appx. 1</u>    Challenged lien documents

<u>Appx. 2</u>    Statutes:

- Lien for labor, services, materials, etc., ARIZ. REV. STAT. § 33-981.
- Preliminary twenty day notice, ARIZ. REV. STAT. § 33-992.01
- Proof of mailing, ARIZ. REV. STAT. § 33-992.02
- Procedure to perfect lien, ARIZ. REV. STAT. § 33-993

## CHALLENGES TO PACIFIC POOLS'S LIEN

The current challenges to Pacific Pools's lien fall into two categories:

A. Preliminary 20-day notices failed to comply with font size requirements of ARIZ. REV. STAT. § 33-992.01(D); and

B. Preliminary 20-day notices not served on OSB.

Each will be discussed in turn.

### OSB's Standing

As a preliminary matter, the court is concerned with OSB's pecuniary standing. While the Trustee has not challenged Pacific Pools' liens, OSB has. OSB's legal standing appears tenuous.

First, OSB has been or likely will be paid its entire debt as a secured creditor. Ample funds remain in the Trustee's account to accomplish this. 11 U.S.C. § 506. Therefore, OSB has no pecuniary interest in these lien claim issues. *See, e.g., Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). It should therefore not be incurring unnecessary fees and costs at the expense of others.

Second, OSB has no litigation outstanding by which any party has yet formally challenged its lien, with the exception of the discrete parcel of land upon which RDC contends that it holds a senior lien claim. The liens at issue here are not part of that development. OSB has been paid over $24 million on its lien claims.

### A. Font Size

Only OSB maintains that the font size requirements of ARIZ. REV. STAT. § 33-992.01(D) were not substantially followed by Pacific Pools. The Trustee has not challenged Pacific Pools on this, or indeed any, substantive ground.

Pacific Pools' preliminary 20-day notice poses yet more interesting, and legally baffling questions. While the statute requires substantial compliance on font size, the question raised by the statute is: Does the font size requirement apply to only the printed form, or does it also apply to other individually typed information placed on each separate preliminary 20-day notice? The statute is ambiguous on the point.

The more logical conclusion is that it only applies to the print on the pre-printed form. Otherwise, for example, someone who hand writes a name in larger block letters would thereby destroy the document's intended purpose--to notify others of a possible future lien claim. Thus, one must logically omit the one-time lettering which is added to a standard form.

Turning to the document itself, it would appear to the unaided eye that the font size of the warning language is as large as the type on the rest of the document. For example, the court measured both the capitals "A" and "W" in the line reading, "Additional Notice to Property Owner and all Interested Parties" with the same capital letters found within the warning, and they measured the same. The difference in the rest of the paragraph is that the preamble heading is in all capital letters, while the warning paragraph is not. <u>Nor</u> is the warning contained in the <u>statute</u> itself in all capital letters.

When the unaided eye (actually, the court did use a magnifying glass and a ruler) cannot distinguish a difference and when Dean C. Funk provided an undisputed affidavit that also so states, the court can reach no other conclusion but that the font size of the Pacific Pools' preliminary 20-day notice substantially complies with ARIZ. REV. STAT. § 33-992.01(D).

OSB's partial motion for summary judgment on this point will be denied.

### B. <u>Preliminary 20-day Notices Not Served on OSB</u>

OSB maintains that it was not served with Pacific Pools' preliminary 20-day notice. This argument cannot support summary judgment for numerous reasons.

First, OSB has acknowledged that it has misplaced, lost, or destroyed any such documents that might have been sent to it, such as the instant preliminary 20-day notice. Therefore, it cannot claim that it never received notice. It cannot prove that fact one way or the other.

Second, OSB has apparently neglected to monitor its multi-million dollar loan, even though its loan documents impose a duty of cooperation and information-sharing between it and its borrowers, the Debtors. Thus, again, OSB cannot definitely state whether it did or did not know of Pacific Pools' lien.

Third, OSB has provided no affidavits of non-receipt. Nor, without paperwork in its files, could it. Even if OSB were to make such a claim, Pacific Pools could attempt to rebut it by affidavit. ARIZ. REV. STAT. § 33-992.02.

These factual issues aside, though, brings the inquiry to its real point--what is the true legislative purpose of ARIZ. REV. STAT. § 33-992.01(B)?

The statute requires a mechanic or materialman, in order to eventually perfect a statutory lien against another's property, for whose benefit he has labored and/or whose property is otherwise improved, to serve preliminary notices within 20 days after beginning work. ARIZ. REV. STAT. § 33-992.01(C). The preliminary 20-day notice must contain certain information, and be served in some manner upon the owner, reputed owner, original contractor or reputed contractor, the construction lender, if any, or reputed construction lender, if any, and the person with whom the claimant has contracted. ARIZ. REV. STAT. § 33-992.01(B). "Construction lender" includes the beneficiary under a deed of trust, such as OSB, whose loan has been used to defray the construction costs. ARIZ. REV. STAT. § 33-992.01(A)(1).

Now comes the rub. If there are inaccuracies contained within the preliminary 20-day notice, the "owner or other interested party" which did receive the preliminary 20-day notice is required to inform the lien claimant with "all information necessary to correct any inaccuracies in the notice . . . or lose as a defense any inaccuracy. . . ." ARIZ. REV. STAT. § 33-992.01(D).

Sections I and J of the same statute impose a duty on those receiving the information to communicate with the lien claimant. But if, as here, the owner ignores this duty, and if the claimant has listed the wrong construction lender, what is the legal effect? According to OSB, the lien which is eventually recorded is invalid as to it. However, there is no statute to support OSB's argument on the effect of such an omission. When one considers that the purpose of the statute is to protect the lien rights of mechanics and materialmen, then what legislative purpose is served by setting traps for giving notice to those with whom the claimant has never dealt, who may be many states away, be faceless on the project, and whose owner (who rightly did receive notice) ignores the duty to convey to the lien claimant the accurate information? This statute was not written to benefit construction lenders. It was written to benefit lien claimants and owners. No Arizona case or statute has been written to deny a lien claimant of his/her/its lawful rights to the substantial benefit of a lender, in a circumstance similar to that presented here.

8

Case 4:06-ap-00106-JMM    Doc 239    Filed 05/16/07    Entered 05/16/07 14:11:12    Desc
Main Document    Page 8 of 9

|   |   |
|---|---|
| 1 | In the instant case, Pacific Pools made a good faith effort to list the construction lender which |
| 2 | it believed was the proper party to be noted on the preliminary 20-day notice. Even if it as wrong (about |
| 3 | which no one advised it), it did its best to comply with the statute. Simply because others failed in their |
| 4 | duties to keep the lien claimant properly advised under the statute, does not have the legal effect of |
| 5 | invalidating an otherwise effective mechanic's and materialmen's lien claim. |
| 6 | OSB has failed to show that it is entitled to summary judgment on this issue, and therefore |
| 7 | its motion will be denied. |

### RULING

A separate order will be issued simultaneously with the issuance of this Memorandum Decision. FED. R. BANKR. P. 9021.

DATED: May 16 2007.

_____
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE