FILED

MAY 16 2007

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

In re:

TURNER-DUNN HOMES, INC., and others,

Debtors.

BCI BEBOUT CONCRETE, INC.,

Plaintiff,

vs.

TURNER-DUNN HOMES, INC., et al., and John Does 1-10,

Defendants.

ROBERT P. ABELE, Chapter 11 Trustee,

Third-Party Plaintiff,

vs.

SONORAN CONCRETE, LLC, an Arizona limited liability company; GALE CONTRACTOR SERVICES, a Florida corporation; CHAS ROBERTS AIR CONDITIONING, INC., an Arizona corporation; DEL MARTENSON DEVELOPMENT CORP., an Arizona corporation; TRUSSWAY, INC. WEST, an Arizona corporation; TRIPLE S FENCE CO., an Arizona corporation; RIGGS PLUMBING, LLC, an Arizona limited liability company; ALLIANCE LUMBER, LLC, an Arizona limited liability company; KAY CONSTRUCTION, INC., an Arizona corporation, PEAK CONSTRUCTION, INC., an Arizona corporation; DIVERSIFIED ROOFING CORP., an Arizona corporation; INTEGRATED STUCCO, INC., an Arizona corporation; MITCHELL ELECTRIC CO., INC., an Arizona corporation; A COMPANY PORTABLE RESTROOMS INC., an

Chapter 11

Case No. 4-06-bk-00961-JMM

(Jointly Administered With Case Nos.: 4-06-bk-00962-JMM; 4-06-bk-00963-JMM; 4-06-bk-00964-JMM; 4-06-bk-00965-JMM)

Adversary No. 4-06-ap-00106-JMM

**MEMORANDUM DECISION RE:**

**SUMMARY JUDGMENT (PARTIAL)**

**INVOLVING LIEN CLAIMANT**

**MITCHELL ELECTRIC CO., INC.**

Idaho corporation; JORDAN COMPANY; PACIFIC POOLS AND SPAS, LLC, an Arizona limited liability company; MARICOPA MEADOWS HOMEOWNERS ASSOCIATION, an Arizona corporation; SANDVICK EQUIPMENT & SUPPLY CO.; ESCO ELECTRIC WHOLESALE, INC.; RDC CONSTRUCTION, INC., an Arizona corporation; DAYSPRING DEVELOPMENT, INC., an Arizona corporation; OUTDOOR ENVIRONMENTAL SYSTEMS, INC aka OES, INC. dba RAINDANCE SYSTEMS, an Arizona corporation; OHIO SAVINGS BANK, a federal savings bank; WRI INVESTMENTS III, LLC, a Washington limited liability company; ANY UNKNOWN PARTIES IN POSSESSION; UNKNOWN HEIRS AND DEVISEES OF ANY OF THE FOREGOING WHO ARE DECEASED; and ABC ENTITIES 1-100,

Third- Party Defendants

## INTRODUCTION - PROCEDURE AND METHODOLOGY

The Trustee has filed motions for partial summary judgment against numerous mechanics' and materialmens' lien claimants, challenging on "statutorily deficient" or "facially inadequate" grounds, the preliminary or final recorded lien documents of such lien claimants. In some cases, the lien claimants have also filed for partial summary judgment on the same issues.

For administrative convenience, the court has dealt with each lien claimant separately, although many of the same legal issues may affect other lien claimants as well. For that reason, many of the court's discussions and analyses may be repeated in whole or in part in its various decisions. Separating the decisions, as to each lien claimant, will enable both the court and each affected party to focus on particularized issues or fact differences, and will also facilitate appellate review.

When discussing the motions for summary judgment, the court will consider the points made against the particular lien claimant, and will include the totality of challenges to the lien, whether made by the Trustee, Ohio Savings Bank ("OSB"), or WRI Investments III, LLC ("WRI"), alone or in combination with one another.

In the end, the court will have addressed all challenges to the liens presented by the motions, and will rule on each legal point. In some instances, factual issues which were unforeseen at the outset may present themselves, and if so, the court will indicate which issues are to be deferred for future hearings.

With one eye open to the appellate process, the court does not intend to combine any ruling with Rule 54(b) language, because, if further proceedings become necessary, the matter may not be ripe for final review until it is finally determined. This will save counsel and any reviewing court the expense and time in taking and deciding interlocutory appeals.

Another tool which the court will use is the attachment of an appendix to each decision, which will include each lien claimant's challenged lien documents. In this way, the parties, this court, and any reviewing court will having ready access to the operative documents involving each creditor. The appendix will also include the applicable Arizona statutes.

In some instances, a mechanic's lien claimant may have responded to the Trustee's motion and countered with its own summary judgment motion or partial summary judgment motion. When this procedure has occurred, the court will also rule on those issues unless the ruling is subsumed within the main decision.

To the extent that this decision requires refinement or further clarification, the court asks that the parties first convene a status hearing with the court prior to filing further pleadings on the decided issues. In that way, all parties can arrive at a unified method to further process the issues.

The court also understands that in many instances, the parties have not attached all or each of their claimed liens or notices. This is because all or each are essentially identical and a ruling on a particular legal issue is applicable across the board. Thus, the parties have selected samples for the court's review.

As noted from the bench, the court appreciates the excellent quality of the work product and arguments presented by all attorneys in this case. As all parties can appreciate, the issues presented were not simple ones, and the issues are important to the ultimate outcome of this case. For their efforts, the court thanks counsel in clearly focusing the issues.

## WHOM THIS DECISION AFFECTS

This decision involves the allegations made against Mitchell Electric Co., Inc.

## ARIZONA LAW

In a bankruptcy case, property rights are determined by reference to state law. *Butner v. United States*, 440 U.S. 48 (1979). Bankruptcy courts have "core" jurisdiction to hear and determine issues involving the extent, validity, and priority of liens against an estate. 28 U.S.C. § 157(b)(2)(K).

Mechanics' and materialmen's liens are creatures of statute ARIZ. REV. STAT. § 33-981, *et seq*. Such statutes have existed in Arizona since statehood. *See, e.g. Arizona Eastern R.R. Co. v. Globe Hardware Co.*, 14 Ariz. 397, 400, 129 P. 1104, 1105 (1913) ("The primary object of our lien law is to insure to the laborer and materialman the payment of their accounts, and incidentally to protect the owner against the filing of liens by such persons against his property for services and material rendered and furnished the original contract."); *see also* CIVIL CODE 1913, § 3639. They exist principally to protect mechanics, materialmen, and those who furnish labor or supplies to another's land, thereby enhancing its value, from the dangers of non-payment. *See United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, 484, 4 P.3d 1022, 1027 (App. 2000); *Hayward Lumber & Inv. Co. v. Graham*, 104 Ariz. 103, 111, 449 P.2d 31, 39 (1968). These rights are "jealously protected," *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 515, 8 P.2d 256, 258 (1932), and when construing them the statutes must be liberally construed to effect their primary purpose. *See In re JWJ Contracting Co.,* 287 B.R. 501, 509-10 (9th Cir. BAP 2002) (construing Arizona's statutes), *aff'd*. 371 F.3d 1079 (9th Cir. 2004); *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 181, 370 P.2d 661, 664 (1962). While the statutes themselves appear, on the surface, to contain requirements which can be easily followed, the Arizona courts have held that substantial compliance with the statutes is sufficient to perfect a lien, provided that such compliance is not inconsistent with the legislative purpose. *See, e.g., Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 431, 561 P.2d 740, 755 (App. 1977); *Columbia Group, Inc. v. Jackson*, 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986); *MLM Constr. Co. v. Pace Corp.*, 172 Ariz. 226, 229, 386 P.2d 439, 442 (App. 1992); *Peterman-Donnelly Eng'rs & Contractors*

*Corp. v. First Nat'l Bank,* 2 Ariz. App. 321, 323-24, 408 P.2d 841 (1966). While Arizona courts will, from time to time, describe the lien perfection process as one to be strictly followed, *see MLM Constr.* Co., 172 Ariz. at 229, 836 P.2d at 442 (citing cases), the law's modern evolution has inevitably trended toward the substantial compliance model.

In addition to the protection of mechanics and materialmen, a secondary purpose of the law is to protect the property owner. *See, e.g., Arizona Gunite Builders, Inc. v. Continental Cas. Co.*, 105 Ariz. 99, 101, 459 P.2d 724, 726 (1969). The proper notification and recordation of a mechanic's lien serves to keep invalid or improper clouds on title from impairing an owner's rights to enjoy the benefits of ownership.

As for the specific procedure necessary for a lien claimant to perfect a lien, it must, within 20 days of first furnishing labor, professional services, materials, machinery, fixtures, or tools to the job site, prepare what is designated as a "preliminary twenty day notice" (hereinafter "preliminary 20-day notice") and serve it. ARIZ. REV. STAT. § 33-992.01. This statute was initially enacted in 1979, and has been amended five times since. Once the job is completed, the lien must be recorded within a specific period of time thereafter. ARIZ. REV. STAT. § 33-993.

Within each of these two statutes are contained numerous detailed requirements, some of which are at issue in the instant case. A copy of each of these statutes is included in the appendix to be filed.

Appx. 1 Challenged lien documents

Appx. 2 Statutes:

- Lien for labor, services, materials, etc., ARIZ. REV. STAT. § 33-981.
- Preliminary twenty day notice, ARIZ. REV. STAT. § 33-992.01
- Proof of mailing, ARIZ. REV. STAT. § 33-992.02
- Procedure to perfect lien, ARIZ. REV. STAT. § 33-993

## CHALLENGES TO MITCHELL ELECTRIC'S LIEN

The current challenges to Mitchell Electric's lien fall into several categories:

A. Failure to attach contract;

B. Failure to serve preliminary 20-day notices on OSB.

Each will be discussed in turn.

### A. Failure to Attach Contract

ARIZ. REV. STAT. § 33-993(A)(3) requires that, in order to perfect a lien, the notice and claim of lien "shall contain . . . [a] statement of the terms, time given and conditions of the contract, if it is oral, or a copy of the contract, if it is written."

In this case, Mitchell Electric attached copies of its invoice and the start order from the Debtors for specific electrical work. Each was dated and itemized as to the work expected and completed. Although the Trustee refers to a contract as Ex. 8, none is attached. Instead, Ex. 8 is a copy of the liens and the invoice and start order described above. If the contract was the standard contract prepared by the Debtors, and if it contains no specific details as to the work to be done, it is typical, but singularly uninformative. There is no total price, no unit price, no dates of performance, nor other specifics as to the work to be performed by Mitchell Electric. In short, the invoice and start request attached to the mechanic's lien is complete enough to satisfy the statute's requirement, and it certainly gives more information than the boilerplate standard form contract. *See Peterman-Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank*, 2 Ariz. App. 321, 323-24, 408 P.2d 841, 843 (1966) The invoice and start order substantially comply with the statute's purpose, being more specific and detailed than the boilerplate standard form contract. The statute's notice requirement was substantially complied with, and the legislature's intent satisfied.

Therefore, the Trustee's motion on this issue will be denied.

**B. Failure to Serve Preliminary 20-day Notices on OSB**

This portion of the instant motions was brought by OSB, only.

OSB contends that Mitchell Electric failed to serve the preliminary 20-day notice upon it. This argument fails the summary judgment test for several reasons.

First, OSB has been or likely will be paid its entire debt as a secured creditor. Ample funds remain in the Trustee's account to accomplish this. 11 U.S.C. § 506. Therefore, OSB has no pecuniary interest in these lien claim issues. *See, e.g., Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). It should therefore not be incurring unnecessary fees and costs at the expense of others. Its standing is tenuous, if it exists at all.

Second, OSB has no litigation outstanding by which any party has yet formally challenged its lien, with the exception of the discrete parcel of land upon which RDC contends that it holds a senior lien claim.

Third, OSB has acknowledged that it has misplaced, lost, or destroyed any such documents that might have been sent to it, such as the instant preliminary 20-day notice. Therefore, it cannot claim that it never received notice. It cannot prove that fact one way or the other.

Fourth, OSB has apparently neglected to monitor its multi-million dollar loan, even though its loan documents impose a duty of cooperation and information-sharing between it and its borrowers, the Debtors. Thus, again, OSB cannot definitely state whether it did or did not know of the Mitchell Electric lien.

Fifth, OSB has provided no affidavits of non-receipt. Nor, without paperwork in its files, could it. Even if OSB were to make such a claim, Mitchell Electric could attempt to rebut it by affidavit. ARIZ. REV. STAT. § 33-992.02.

Mitchell Electric properly served its preliminary 20-day notices on the Debtors. However, the Debtors did not apparently notify Mitchell Electric of any inaccuracies in the lien notices. This duty would have included the information relating to the Debtors' construction lenders, if any. ARIZ. REV. STAT. § 33-992.01(I) and (J).

It is doubtful that the statutory purpose would be served by then depriving a mechanic or

materialman of its entire lien simply because a lender's borrower (the Debtor) failed in its statutory duty to correct misinformation or furnish necessary information to a lien claimant. The statute was not intended to trap materialmen, when the party with whom they are in privity, and upon an information duty rests, utterly fails in its statutory duty. The statute is not entitled "Construction Lenders' Liens," but rather "Mechanic's and Materialmen's Liens" Construction lenders liens are covered by other statutes, such as those dealing with deeds of trust, ARIZ. REV. STAT. § 33-801, *et seq*. The issue here is priority.

Lenders have, and often utilize, many ways in which to police their loans, especially when those loans involve multi-million dollar construction developments. They can place personnel on site; they can have local personnel make periodic and regular visits; they can hire professionals to do the same things; they can have title companies continually update the public records with informal "bring down" reports; and/or they can enforce their loan agreements by compelling their borrowers to either comply, or declare a default under the loan agreements.

What lenders cannot do is to turn their corporate back on a major loan, and then cry "foul" when they find that their borrower has not been completely candid with them.

More briefing is required on the legal issues involved in this unusually complex arena, and there are multiple fact issues to be explored, including, but not limited to prejudice to OSB.

Too much remains to be uncovered, factually and as a matter of law as well as the intent of the legislature, for summary judgment to be granted on this issue. These matters must be fleshed out in the crucible of an actual trial on the merits.

OSB's motion on this point will be denied.

**RULING**

A separate order will be issued simultaneously with the issuance of this Memorandum Decision. FED. R. BANKR. P. 9021.

DATED: May 16 2007.

JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE