FILED

MAY 1 6 2007

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TURNER-DUNN HOMES, INC., and others,<br><br>                   Debtors.<br><br>BCI BEBOUT CONCRETE, INC.,<br><br>                   Plaintiff,<br><br>vs.<br><br>TURNER-DUNN HOMES, INC., et al., and John Does 1-10,<br><br>                   Defendants.<br><br>ROBERT P. ABELE, Chapter 11 Trustee,<br><br>                 Third-Party Plaintiff,<br><br>vs.<br><br>SONORAN CONCRETE, LLC, an Arizona limited liability company; GALE CONTRACTOR SERVICES, a Florida corporation; CHAS ROBERTS AIR CONDITIONING, INC., an Arizona corporation; DEL MARTENSON DEVELOPMENT CORP., an Arizona corporation; TRUSSWAY, INC. WEST, an Arizona corporation; TRIPLE S FENCE CO., an Arizona corporation; RIGGS PLUMBING, LLC, an Arizona limited liability company; ALLIANCE LUMBER, LLC, an Arizona limited liability company; KAY CONSTRUCTION, INC., an Arizona corporation, PEAK CONSTRUCTION, INC., an Arizona corporation; DIVERSIFIED ROOFING CORP., an Arizona corporation; INTEGRATED STUCCO, INC., an Arizona corporation; MITCHELL ELECTRIC CO., INC., an Arizona corporation; A COMPANY PORTABLE RESTROOMS INC., an | Chapter 11<br><br>Case No. 4-06-bk-00961-JMM<br><br>(Jointly Administered With Case Nos.: 4-06-bk-00962-JMM; 4-06-bk-00963-JMM; 4-06-bk-00964-JMM; 4-06-bk-00965-JMM)<br><br>Adversary No. 4-06-ap-00106-JMM<br><br>**MEMORANDUM DECISION RE:**<br><br>**SUMMARY JUDGMENT (PARTIAL)**<br><br>**INVOLVING LIEN CLAIMANT**<br><br>**RIGGS PLUMBING, LLC** |

| | |
|---|---|
| 1    Idaho corporation; JORDAN COMPANY; PACIFIC | ) |
|      POOLS AND SPAS, LLC, an Arizona limited | ) |
| 2    liability company; MARICOPA MEADOWS | ) |
|      HOMEOWNERS ASSOCIATION, an Arizona | ) |
| 3    corporation; SANDVICK EQUIPMENT & SUPPLY | ) |
|      CO.; ESCO ELECTRIC WHOLESALE, INC.; RDC | ) |
| 4    CONSTRUCTION, INC., an Arizona corporation; | ) |
|      DAYSPRING DEVELOPMENT, INC., an Arizona | ) |
| 5    corporation; OUTDOOR ENVIRONMENTAL | ) |
|      SYSTEMS, INC aka OES, INC. dba RAINDANCE | ) |
| 6    SYSTEMS, an Arizona corporation; OHIO | ) |
|      SAVINGS BANK, a federal savings bank; WRI | ) |
| 7    INVESTMENTS III, LLC, a Washington limited | ) |
|      liability company; ANY UNKNOWN PARTIES IN | ) |
| 8    POSSESSION; UNKNOWN HEIRS AND | ) |
|      DEVISEES OF ANY OF THE FOREGOING WHO | ) |
| 9    ARE DECEASED; and ABC ENTITIES 1-100, | ) |
|      | ) |
| 10       Third- Party Defendants | ) |

## INTRODUCTION - PROCEDURE AND METHODOLOGY

The Trustee has filed motions for partial summary judgment against numerous mechanics' and materialmens' lien claimants, challenging on "statutorily deficient" or "facially inadequate" grounds, the preliminary or final recorded lien documents of such lien claimants. In some cases, the lien claimants have also filed for partial summary judgment on the same issues.

For administrative convenience, the court has dealt with each lien claimant separately, although many of the same legal issues may affect other lien claimants as well. For that reason, many of the court's discussions and analyses may be repeated in whole or in part in its various decisions. Separating the decisions, as to each lien claimant, will enable both the court and each affected party to focus on particularized issues or fact differences, and will also facilitate appellate review.

When discussing the motions for summary judgment, the court will consider the points made against the particular lien claimant, and will include the totality of challenges to the lien, whether made by the Trustee, Ohio Savings Bank ("OSB"), or WRI Investments III, LLC ("WRI"), alone or in combination with one another.

In the end, the court will have addressed all challenges to the liens presented by the motions, and will rule on each legal point. In some instances, factual issues which were unforeseen at the outset may present themselves, and if so, the court will indicate which issues are to be deferred for future hearings.

With one eye open to the appellate process, the court does not intend to combine any ruling with Rule 54(b) language, because, if further proceedings become necessary, the matter may not be ripe for final review until it is finally determined. This will save counsel and any reviewing court the expense and time in taking and deciding interlocutory appeals.

Another tool which the court will use is the attachment of an appendix to each decision, which will include each lien claimant's challenged lien documents. In this way, the parties, this court, and any reviewing court will have ready access to the operative documents involving each creditor. The appendix will also include the applicable Arizona statutes.

In some instances, a mechanic's lien claimant may have responded to the Trustee's motion and countered with its own summary judgment motion or partial summary judgment motion. When this procedure has occurred, the court will also rule on those issues unless the ruling is subsumed within the main decision.

To the extent that this decision requires refinement or further clarification, the court asks that the parties first convene a status hearing with the court prior to filing further pleadings on the decided issues. In that way, all parties can arrive at a unified method to further process the issues.

The court also understands that in many instances, the parties have not attached all or each of their claimed liens or notices. This is because all or each are essentially identical and a ruling on a particular legal issue is applicable across the board. Thus, the parties have selected samples for the court's review.

As noted from the bench, the court appreciates the excellent quality of the work product and arguments presented by all attorneys in this case. As all parties can appreciate, the issues presented were not simple ones, and the issues are important to the ultimate outcome of this case. For their efforts, the court thanks counsel in clearly focusing the issues.

## WHOM THIS DECISION AFFECTS

This decision involves the allegations made against Rigg Plumbing, LLC ("Riggs"). Only OSB challenges the lien in its motion.

## ARIZONA LAW

In a bankruptcy case, property rights are determined by reference to state law. *Butner v. United States*, 440 U.S. 48 (1979). Bankruptcy courts have "core" jurisdiction to hear and determine issues involving the extent, validity, and priority of liens against an estate. 28 U.S.C. § 157(b)(2)(K).

Mechanics' and materialmen's liens are creatures of statute ARIZ. REV. STAT. § 33-981, *et seq*. Such statutes have existed in Arizona since statehood. *See, e.g. Arizona Eastern R.R. Co. v. Globe Hardware Co.*, 14 Ariz. 397, 400, 129 P. 1104, 1105 (1913) ("The primary object of our lien law is to insure to the laborer and materialman the payment of their accounts, and incidentally to protect the owner against the filing of liens by such persons against his property for services and material rendered and furnished the original contract."); *see also* CIVIL CODE 1913, § 3639. They exist principally to protect mechanics, materialmen, and those who furnish labor or supplies to another's land, thereby enhancing its value, from the dangers of non-payment. *See United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, 484, 4 P.3d 1022, 1027 (App. 2000); *Hayward Lumber & Inv. Co. v. Graham*, 104 Ariz. 103, 111, 449 P.2d 31, 39 (1968). These rights are "jealously protected," *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 515, 8 P.2d 256, 258 (1932), and when construing them the statutes must be liberally construed to effect their primary purpose. *See In re JWJ Contracting Co.*, 287 B.R. 501, 509-10 (9th Cir. BAP 2002) (construing Arizona's statutes), *aff'd*. 371 F.3d 1079 (9th Cir. 2004); *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 181, 370 P.2d 661, 664 (1962). While the statutes themselves appear, on the surface, to contain requirements which can be easily followed, the Arizona courts have held that substantial compliance with the statutes is sufficient to perfect a lien, provided that such compliance is not inconsistent with the legislative purpose. *See, e.g., Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 431, 561 P.2d 740, 755 (App. 1977); *Columbia Group, Inc. v. Jackson*, 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986); *MLM Constr. Co. v.*

*Pace Corp.*, 172 Ariz. 226, 229, 386 P.2d 439, 442 (App. 1992); *Peterman-Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank*, 2 Ariz. App. 321, 323, 408 P.2d 841, 843 (1965). While Arizona courts will, from time to time, describe the lien perfection process as one to be strictly followed, *see MLM Constr. Co.*, 172 Ariz. at 229, 836 P.2d at 442 (citing cases), the law's modern evolution has inevitably trended toward the substantial compliance model.

In addition to the protection of mechanics and materialmen, a secondary purpose of the law is to protect the property owner. *See, e.g., Arizona Gunite Builders, Inc. v. Continental Cas. Co.*, 105 Ariz. 99, 101, 459 P.2d 724, 726 (1969). The proper notification and recordation of a mechanic's lien serves to keep invalid or improper clouds on title from impairing an owner's rights to enjoy the benefits of ownership.

As for the specific procedure necessary for a lien claimant to perfect a lien, it must, within 20 days of first furnishing labor, professional services, materials, machinery, fixtures, or tools to the job site, prepare what is designated as a "preliminary twenty day notice" (hereinafter "preliminary 20-day notice") and serve it. ARIZ. REV. STAT. § 33-992.01. This statute was initially enacted in 1979, and has been amended five times since. Once the job is completed, the lien must be recorded within a specific period of time thereafter. ARIZ. REV. STAT. § 33-993.

Within each of these two statutes are contained numerous detailed requirements, some of which are at issue in the instant case. A copy of each of these statutes is included in the appendix to be filed.

<u>Appx. 1</u>  Challenged lien documents

<u>Appx. 2</u>  Statutes:
- Lien for labor, services, materials, etc., ARIZ. REV. STAT. § 33-981.
- Preliminary twenty day notice, ARIZ. REV. STAT. § 33-992.01
- Proof of mailing, ARIZ. REV. STAT. § 33-992.02
- Procedure to perfect lien, ARIZ. REV. STAT. § 33-993

5
Case 4:06-ap-00106-JMM   Doc 243   Filed 05/16/07   Entered 05/16/07 14:38:47   Desc
Main Document   Page 5 of 8

# CHALLENGES TO RIGGS' LIEN

The current challenge to Riggs's lien is a solitary one:

- No affidavit of service of the preliminary 20-day notice upon OSB.

## Standing and Lost Documents

OSB contends that Riggs failed to serve the preliminary 20-day notice upon it. This argument fails the summary judgment test for several reasons.

First, OSB has been or likely will be paid its entire debt as a secured creditor. Ample funds remain in the Trustee's account to accomplish this. 11 U.S.C. § 506. Therefore, OSB has no pecuniary interest in these lien claim issues. *See, e.g., Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 492 (9th Cir. 1983). It should therefore not be incurring unnecessary fees and costs at the expense of others.

Second, OSB has no litigation outstanding by which any party has yet formally challenged its lien, with the exception of the discrete parcel of land upon which RDC contends that it holds a senior lien claim.

Third, OSB has acknowledged that it has misplaced, lost, or destroyed any such documents that might have been sent to it, such as the instant preliminary 20-day notice. Therefore, it cannot claim that it never received notice. It cannot prove that fact one way or the other.

Fourth, OSB has apparently neglected to monitor its multi-million dollar loan, even though its loan documents impose a duty of cooperation and information-sharing between it and its borrowers, the Debtors. Thus, again, OSB cannot definitely state whether it did or did not know of the Riggs lien.

Fifth, OSB has provided no affidavits of non-receipt. Nor, without paperwork in its files, could it. Even if OSB were to make such a claim, Riggs could attempt to rebut it by affidavit. ARIZ. REV. STAT. § 33-992.02.

## Preliminary 20-day Notices Were Not Served on OSB

OSB contends that it did not receive copies of the preliminary 20-day notices. From the exhibits submitted, this would appear to be the case, at least on the surface.

But whether OSB actually received them, or notice of them, is apparently unknown, because OSB has conceded that its records in this regard have been misplaced, lost or destroyed, and are unavailable. Whether OSB properly monitored its loan, or turned a blind eye toward its Arizona customer, remains an issue for trial.

And if, ultimately, it is indeed true that the liens were never served on OSB, the parties will need to brief the court on the legal effect of such omission. The parties will be required to address the statute's silence on the point, as it affects the actual lien.

Additionally, the parties need to address the impact of the Debtor's failure to correct the clear inaccuracies in the Riggs preliminary 20-day notices, when Riggs simply omitted any reference to the question of who the lender or reputed lender was. At that point, did not the duty to correct the inaccuracy immediately shift to the Debtors, pursuant to ARIZ. REV. STAT. § 33-992.01(I) and (J)? Can a borrower and a lender collude to ignore duties imposed by statutes, and thereby deprive an innocent materialman of a lien, simply by failing to correct an inaccuracy? Can an owner do so singly, without collusion? Does a lender, with whom a materialman has no privity of contract, benefit from a bankrupt borrower's failure to follow the statute's requirement to correct inaccuracies? Did the Arizona legislature intend to deprive materialmen of valid liens in such an instance? Must the value of any enhancement to the collateral be considered?

These questions, and many more are deserving of substantially more legal thought than has heretofore been given to these interesting statutes. As a result, the court would not be dispensing substantial justice unless it denied the current fairly superficial motion for summary judgment on this point, and required the parties and itself to delve far deeper into these issues.

Therefore, OSB's partial motion for summary judgment on the point at issue must, and will be denied.

7

## **RULING**

A separate order will be issued simultaneously with the issuance of this Memorandum Decision. FED. R. BANKR. P. 9021.

DATED: May 16 2007.

*James M. Marlar*
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE