# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TURNER-DUNN HOMES, INC., and others,<br><br>                    Debtors. | Chapter 11<br><br>Case No. 4-06-bk-00961-JMM<br><br>(Jointly Administered With Case Nos.:<br>4-06-bk-00962-JMM; 4-06-bk-00963-JMM;<br>4-06-bk-00964-JMM; 4-06-bk-00965-JMM) |
| BCI BEBOUT CONCRETE, INC.,<br><br>                    Plaintiff,<br><br>vs.<br><br>TURNER-DUNN HOMES, INC., et al., and John Does 1-10,<br><br>                  Defendants. | Adversary No. 4-06-ap-00106-JMM<br><br>**MEMORANDUM DECISION RE:**<br><br>**SUMMARY JUDGMENT (PARTIAL)**<br><br>**INVOLVING LIEN CLAIMANT** |
| ROBERT P. ABELE, Chapter 11 Trustee,<br><br>                  Third-Party Plaintiff,<br><br>vs.<br><br>SONORAN CONCRETE, LLC, an Arizona limited liability company; GALE CONTRACTOR SERVICES, a Florida corporation; CHAS ROBERTS AIR CONDITIONING, INC., an Arizona corporation; DEL MARTENSON DEVELOPMENT CORP., an Arizona corporation; TRUSSWAY, INC. WEST, an Arizona corporation; TRIPLE S FENCE CO., an Arizona corporation; RIGGS PLUMBING, LLC, an Arizona limited liability company; ALLIANCE LUMBER, LLC, an Arizona limited liability company; KAY CONSTRUCTION, INC., an Arizona corporation, PEAK CONSTRUCTION, INC., an Arizona corporation; DIVERSIFIED ROOFING CORP., an Arizona corporation; INTEGRATED STUCCO, INC., an Arizona corporation; MITCHELL ELECTRIC CO., INC., an Arizona corporation; A COMPANY PORTABLE RESTROOMS INC., an | **BCI BEBOUT<br>CONCRETE, INC.** |

| | |
|---|---|
| 1 | Idaho corporation; JORDAN COMPANY; PACIFIC )
| | POOLS AND SPAS, LLC, an Arizona limited )
| 2 | liability company; MARICOPA MEADOWS )
| | HOMEOWNERS ASSOCIATION, an Arizona )
| 3 | corporation; SANDVICK EQUIPMENT & SUPPLY )
| | CO.; ESCO ELECTRIC WHOLESALE, INC.; RDC )
| 4 | CONSTRUCTION, INC., an Arizona corporation; )
| | DAYSPRING DEVELOPMENT, INC., an Arizona )
| 5 | corporation; OUTDOOR ENVIRONMENTAL )
| | SYSTEMS, INC aka OES, INC. dba RAINDANCE )
| 6 | SYSTEMS, an Arizona corporation; OHIO )
| | SAVINGS BANK, a federal savings bank; WRI )
| 7 | INVESTMENTS III, LLC, a Washington limited )
| | liability company; ANY UNKNOWN PARTIES IN )
| 8 | POSSESSION; UNKNOWN HEIRS AND )
| | DEVISEES OF ANY OF THE FOREGOING WHO )
| 9 | ARE DECEASED; and ABC ENTITIES 1-100, )
| | )
| 10 | _____Third- Party Defendants_____ )

## INTRODUCTION - PROCEDURE AND METHODOLOGY

The Trustee has filed motions for partial summary judgment against numerous mechanics' and materialmens' lien claimants, challenging on "statutorily deficient" or "facially inadequate" grounds, the preliminary or final recorded lien documents of such lien claimants. In some cases, the lien claimants have also filed for partial summary judgment on the same issues.

For administrative convenience, the court has dealt with each lien claimant separately, although many of the same legal issues may affect other lien claimants as well. For that reason, many of the court's discussions and analyses may be repeated in whole or in part in its various decisions. Separating the decisions, as to each lien claimant, will enable both the court and each affected party to focus on particularized issues or fact differences, and will also facilitate appellate review.

When discussing the motions for summary judgment, the court will consider the points made against the particular lien claimant, and will include the totality of challenges to the lien, whether made by the Trustee, Ohio Savings Bank ("OSB"), or WRI Investments III, LLC ("WRI"), alone or in combination with one another.

In the end, the court will have addressed all challenges to the liens presented by the motions, and will rule on each legal point. In some instances, factual issues which were unforeseen at the outset may present themselves, and if so, the court will indicate which issues are to be deferred for future hearings.

With one eye open to the appellate process, the court does not intend to combine any ruling with Rule 54(b) language, because, if further proceedings become necessary, the matter may not be ripe for final review until it is finally determined. This will save counsel and any reviewing court the expense and time in taking and deciding interlocutory appeals.

Another tool which the court will use is the attachment of an appendix to each decision, which will include each lien claimant's challenged lien documents. In this way, the parties, this court, and any reviewing court will have ready access to the operative documents involving each creditor. The appendix will also include the applicable Arizona statutes.

In some instances, a mechanic's lien claimant may have responded to the Trustee's motion and countered with its own summary judgment motion or partial summary judgment motion. When this procedure has occurred, the court will also rule on those issues unless the ruling is subsumed within the main decision.

To the extent that this decision requires refinement or further clarification, the court asks that the parties first convene a status hearing with the court prior to filing further pleadings on the decided issues. In that way, all parties can arrive at a unified method to further process the issues.

The court also understands that in many instances, the parties have not attached all or each of their claimed liens or notices. This is because all or each are essentially identical and a ruling on a particular legal issue is applicable across the board. Thus, the parties have selected samples for the court's review.

As noted from the bench, the court appreciates the excellent quality of the work product and arguments presented by all attorneys in this case. As all parties can appreciate, the issues presented were not simple ones, and the issues are important to the ultimate outcome of this case. For their efforts, the court thanks counsel in clearly focusing the issues.

3

# WHOM THIS DECISION AFFECTS

This decision involves the allegations made against BCI Bebout Concrete, Inc.

# ARIZONA LAW

In a bankruptcy case, property rights are determined by reference to state law. *Butner v. United States*, 440 U.S. 48 (1979). Bankruptcy courts have "core" jurisdiction to hear and determine issues involving the extent, validity, and priority of liens against an estate. 28 U.S.C. § 157(b)(2)(K).

Mechanics' and materialmen's liens are creatures of statute ARIZ. REV. STAT. § 33-981, *et seq.* Such statutes have existed in Arizona since statehood. *See, e.g. Arizona Eastern R.R. Co. v. Globe Hardware Co.*, 14 Ariz. 397, 400, 129 P. 1104, 1105 (1913) ("The primary object of our lien law is to insure to the laborer and materialman the payment of their accounts, and incidentally to protect the owner against the filing of liens by such persons against his property for services and material rendered and furnished the original contract."); *see also* CIVIL CODE 1913, § 3639. They exist principally to protect mechanics, materialmen, and those who furnish labor or supplies to another's land, thereby enhancing its value, from the dangers of non-payment. *See United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, 484, 4 P.3d 1022, 1027 (App. 2000); *Hayward Lumber & Inv. Co. v. Graham*, 104 Ariz. 103, 111, 449 P.2d 31, 39 (1968). These rights are "jealously protected," *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 515, 8 P.2d 256, 258 (1932), and when construing them the statutes must be liberally construed to effect their primary purpose. *See In re JWJ Contracting Co.*, 287 B.R. 501, 509-10 (9th Cir. BAP 2002) (construing Arizona's statutes), *aff'd.* 371 F.3d 1079 (9th Cir. 2004); *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 181, 370 P.2d 661, 664 (1962). While the statutes themselves appear, on the surface, to contain requirements which can be easily followed, the Arizona courts have held that substantial compliance with the statutes is sufficient to perfect a lien, provided that such compliance is not inconsistent with the legislative purpose. *See, e.g., Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 431, 561 P.2d 740, 755 (App. 1977); *Columbia Group, Inc. v. Jackson*, 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986); *MLM Constr. Co. v. Pace Corp.*, 172 Ariz. 226, 229, 386 P.2d 439, 442 (App. 1992); *Peterman-Donnelly Eng'rs & Contractors*

*Corp. v. First Nat'l Bank,* 2 Ariz. App. 321, 323, 408 P.2d 841, 843 (1965). While Arizona courts will, from time to time, describe the lien perfection process as one to be strictly followed, *see MLM Constr. Co.,* 172 Ariz. at 229, 836 P.2d at 442 (citing cases), the law's modern evolution has inevitably trended toward the substantial compliance model.

In addition to the protection of mechanics and materialmen, a secondary purpose of the law is to protect the property owner. *See, e.g., Arizona Gunite Builders, Inc. v. Continental Cas. Co.,* 105 Ariz. 99, 101, 459 P.2d 724, 726 (1969). The proper notification and recordation of a mechanic's lien serves to keep invalid or improper clouds on title from impairing an owner's rights to enjoy the benefits of ownership.

As for the specific procedure necessary for a lien claimant to perfect a lien, it must, within 20 days of first furnishing labor, professional services, materials, machinery, fixtures, or tools to the job site, prepare what is designated as a "preliminary twenty day notice" (hereinafter "preliminary 20-day notice") and serve it. ARIZ. REV. STAT. § 33-992.01. This statute was initially enacted in 1979, and has been amended five times since. Once the job is completed, the lien must be recorded within a specific period of time thereafter. ARIZ. REV. STAT. § 33-993.

Within each of these two statutes are contained numerous detailed requirements, some of which are at issue in the instant case. A copy of each of these statutes is included in the appendix to be filed.

<u>Appx. 1</u>    Challenged lien documents

<u>Appx. 2</u>    Statutes:
- Description of trust property, ARIZ. REV. STAT. § 33-802.
- Lien for labor, services, materials, etc., ARIZ. REV. STAT. § 33-981.
- Preliminary twenty day notice, ARIZ. REV. STAT. § 33-992.01
- Proof of mailing, ARIZ. REV. STAT. § 33-992.02
- Procedure to perfect lien, ARIZ. REV. STAT. § 33-993

# CHALLENGES TO BCI'S LIEN

The current challenges to BCI's lien fall into several categories:

A. Failure to provide legal description in the preliminary 20-day notice or lien itself;

B. Lien not notarized or signed under oath;

C. No affidavit of service of the preliminary 20-day notice;

D. Preliminary 20-day notices failed to comply with font size requirements of ARIZ. REV. STAT. § 33-992.01(D);

E. The preliminary 20-day notice was not signed.

F. The preliminary 20-day notice was not served on OSB.

Each will be discussed in turn.

## A. Failure to Provide Legal Description

The Trustee (this term includes the challenges also made by OSB and WRI) has stated that BCI's mechanic's lien and preliminary 20-day notice failed to provide a proper legal description.

The Trustee's challenge merely states, as a conclusion of law or perhaps a statement of fact, that the liens failed to attach proper legal descriptions. However, the Trustee does not indicate the manner in which the lien's description is misleading, other than noting that the description of the liened property is inconsistent with the actual, "true" legal description.

The purpose of the statute's requirement for a "legal description," ARIZ. REV. STAT. § 33-993(A)(1), is for the owner of the affected property to know which parcel(s) are impacted by the claim of lien. This information can be conveyed in a variety of non-exclusive ways. *See, e.g., S.K. Drywall, Inc. v. Developers Fin. Group, Inc.*, 165 Ariz. 588, 595-96, 799 P.2d 1362, 1368-69 (App. 1990) *vacated in part on other grounds*, 169 Ariz. 345, 819 P.2d 931 (1991); ARIZ. REV. STAT. § 33-802.

Case 4:06-ap-00106-JMM    Doc 245    Filed 05/16/07    Entered 05/16/07 14:42:26    Desc
Main Document    Page 6 of 14

The Trustee objects to BCI's property description as being inadequate, as a matter of law, but attaches no analysis other than by comparing it to the most complete description available.

In response, BCI attached first a declaration, then an affidavit, from Delbert Evans, a title officer and examiner with Stewart Title. Mr. Evans opines and concludes that it is easy to determine the liened property's "exact location" by mere reference to both the claim of lien and to the preliminary 20-day notice. *See* Evans Declaration / Affidavit at para. 7.

Neither the Trustee nor OSB provided a counter-affidavit disputing Mr. Evans' statements. This is not a matter of lack of discovery, it is an undisputed statement of material fact.

The court therefore finds and concludes that the description of the liened property was adequate for an interested party to have easily determined which parcel was impacted by the lien, and that therefore the description provided by BCI was in compliance with the mechanics' lien statutes.

BCI's motion for partial summary judgment on this issue will be granted, while the Trustee's and OSB's motions for partial summary judgment on the same issue will be denied.

### B. Lien Not Notarized or Signed under Oath

ARIZ. REV. STAT. § 33-993(A) requires that a notice and claim of lien "shall be made under oath . . . ." Both the Trustee and OSB contend that BCI's lien was not made "under oath." By this they mean that the document was not signed before a notary public, who is authorized to administer oaths. *See, generally,* ARIZ. REV. STAT. § 41-311, *et seq.* Why this is important to the Trustee and OSB is not clearly articulated. Do these parties question the accuracy of the information contained in the lien, the authority of the signer of the document, whether the penalty of perjury applies, or whether the person signing the document is, in fact, the same person or an imposter? Neither objecting party has provided any thoughtful analysis of this statutory requirement, and therefore this court must address the drafters' intent.

ARIZONA CONST. art. 2, § 7 states:

> The mode of administering an oath, or affirmation, shall be such as shall be most consistent with and binding upon the conscience of the person to whom such oath, or affirmation, may be administered.

The Arizona Revised Statutes also include definitions which are to be used "in the statutes and laws of the state, unless the context otherwise requires: . . . ." One of those definitions is that of an "oath:"

> "Oath" includes affirmation or declaration.

ARIZ. REV. STAT. § 1-215(27).

In the notary statutes, an "oath" or "affirmation" means a notarial act in which a person made "a vow" in the presence of a notary under penalty of perjury, "with reference made to a supreme being in the case of an oath." ARIZ. REV. STAT. § 41-311(10). Thus, even the notary statutes allow for alternative forms of "oaths," each binding upon the oath-taker, subject to being "consistent with and binding upon the conscience . . . ."

Thus, the court must consider the legislative intent of the challenged statute. Did the legislature mean that ARIZ. REV. STAT. § 33-993(A) requires that only a person with a belief in a supreme being is authorized to execute a mechanic's lien?

This court cannot conclude that belief in a supreme being is an absolute requirement of the mechanic's lien "oath" detail in order to accomplish the statute's purpose. Indeed, imposition of such a requirement would not withstand constitutional challenge. U.S. CONST. amend I; ARIZ. CONST. art. 2, § 12. The state constitution provides in part:

> No religious qualification shall be required for any public office or employment, nor shall any person be incompetent as a witness or juror in consequence of his opinion on matters of religion, nor be questioned touching his religious belief in any court of justice to affect the weight of his testimony.

ARIZ. CONST. art. 2, § 12. Nor is the Trustee's proffered reason, if any, consistent with another Arizona statute, ARIZ. REV. STAT. § 1-211(B):

> Statutes shall be liberally construed to effect their objects and to promote justice.

8

If the purpose for the challenge on the "oath" ground is that there was no notarial jurat sufficient to prove the identify of the signer, or to complain that the signer was someone other than who she claimed to be, the objecting parties have not so indicated. Thus, the court has no contrary evidence to challenge Ms. Barbara Huff's identity, nor to dispute that she signed the mechanic's lien under penalty of perjury. Indeed, the purpose of the statute is only to ensure that accurate and truthful statements be made. No one has challenged BCI's documents on any such substantive grounds.

This, then, brings the inquiry to ARIZ. R. CIV. P. 80(i) which authorizes a person, by an unsworn written declaration, to verify items under penalty of perjury. *See, also*, ARIZ. R. CIV. P. 43(b) (witness' affirmation in lieu of oath is acceptable).

Courts will always follow the language of the statute, "if it is plain and unambiguous and the clear meaning does not lead to an absurdity." *U.S.F. & G. Co. v. Michigan Bank*, 27 Ariz. App. 478, 479, 556 P.2d 326, 327 (App. 1976).

Taking these rules, statutes, cases, and the state and federal constitutions as a whole, and construing the mechanics' and materialmen's statutes liberally, the court finds and holds that Ms. Huff's statement, "I declare under penalty of perjury of the State of Arizona that the foregoing is true and correct," is a proper and solemn statement "under oath" as required by ARIZ. REV. STAT. § 33-993(A). Obviously, the intent of the statute is to prevent false claims. Potential perjury charges tend to keep people honest.

On this issue, then, the Trustee's and OSB's motions for summary judgment will be denied, and BCI's motion for partial summary judgment will be granted.

### C. Affidavit of Service of the Preliminary 20-day Notice

The Trustee maintains that neither the mechanic's lien or the preliminary 20-day notice contained an "affidavit" of service of the preliminary 20-day notice. But the statute must be looked at in a way which is designed to make legal and practical sense.

It is true that the BCI preliminary 20-day notice does not contain any type of certificate of mailing, by BCI, to the owner and other interested parties. This appears to be required by ARIZ. REV. STAT. § 33-992.01(F).

The issue then becomes: Is the failure to include a certificate that it was mailed fatal to the eventual claim of lien? The court must conclude that such a failure is not a fatal defect. What the lack of such a certificate does do, however, is place the burden of proof, in the event that receipt is challenged by the owner or other interested party, squarely back on BCI's shoulders. This, then, is where the rebuttable presumptions of ARIZ. REV. STAT. § 33-992.02(2) come into play. In this case, neither the Trustee nor OSB has asserted that they failed to actually receive the preliminary 20-day notice. If they do so, then the burden will be upon BCI to prove, by affidavit, who mailed the instrument, to whom it was mailed, and when such mailing occurred. That affidavit provides a rebuttable presumption, setting up the fact issue for decision.

The Trustee's position is hyper-technical. If the Trustee is correct, a lien claimant must, at its peril, if the preliminary 20-day notice is left unacknowledged for 30 days, <u>always</u> execute an affidavit of mailing to <u>prove</u> mailing, even if no one challenges receipt. This "requirement" would not serve the statute's purpose, which is to give the owner actual notice of a claim of lien against its property. The purpose of this statute is not to impose a requirement designed to impale a lien claim on a meaningless technicality. The contrary dicta in *MLM Constr. Co.*, 172 Ariz. at 232, 836 P.2d at 445 is not persuasive. In that case, Judge Voss, speaking for the panel, actually decided the case on a separate legal issue. Finally, at the very end of the opinion, and without any analysis other than a citation to the statute, found non-compliance regarding service. This court does not accept this dicta as binding Arizona law. In fact, Judge Voss acknowledged the point to be dicta, when in commenting on the issue, noted: "Although <u>we need not do so</u> we also address Pace's alternate contention . . . . " *MLM* at 445 (emphasis supplied). Judicial dicta is defined as that part of an opinion that is not essential to the decision. BLACK'S LAW DICTIONARY "dictum" (8th ed. 2004). Judge Voss was an excellent appellate judge, for whom this court has the highest regard. But the dicta in *MLM* was not an example of his best work. From the opinion, the lack of analysis was unimpressive. And since the point was made in dicta only, this court need not consider it.

To date, neither the Trustee (standing the shoes of the Debtors) nor OSB (which has destroyed, lost, or has no records to support either receipt or non-receipt), has claimed that they failed to receive notice.

The statutory section at issue is ARIZ. REV. STAT. § 33-992.02. Its statutory <u>purpose</u> is to establish a method by which a lienholder must eventually <u>prove</u> that it mailed the preliminary 20-day notice,

10

Case 4:06-ap-00106-JMM    Doc 245    Filed 05/16/07    Entered 05/16/07 14:42:26    Desc
Main Document    Page 10 of 14

if challenged on whether service was effected. It does <u>not require</u> that an "affidavit" <u>ever</u> have to be executed, nor does the statute impose a time requirement on the lien claimant. It is left open-ended for only one, obvious reason: <u>proof</u> is necessary to <u>disprove</u> a contrary contention. If service is not challenged, that ground for objection is waived. If a lienholder's initial noticing is challenged, the statute simply provides for a method to prove how service and notice was given, and to establish a rebuttable presumption that service was accomplished. If service is never challenged, then no affidavit ever becomes necessary.

In the instant case, neither the Trustee nor OSB are asserting actual lack of service, by mail, in the first instance. Therefore, ARIZ. REV. STAT. § 33-992.02 has never been called into play. Until service and receipt is challenged, the issue cannot be decided on summary judgment.

For purposes of summary judgment, however, the court concludes that this omission by BCI does not cause its lien to fail. Further proof will be required.

All motions for summary judgment on this issue will be denied.

### D. <u>Font Size</u>

The Trustee and OSB contend that the font size of the type, on the BCI preliminary 20-day notice, does not comply with ARIZ. REV. STAT. § § 33-992.01(D)'s mandate that certain language "be in type at least as large as the largest type otherwise on the document."

A review of the BCI document reflects that it complies. The warning section is not in bold typeface, nor does the statute so require. But it is in the same font as the substantive content of the rest of the document. In fact, the challenged font is actually larger than some of the other font sizes found on the document.

Were one to split hairs, it could perhaps be argued that the challenged lettering is not as large as the document's headings. But then one would be compelled to analyze whether headings constitute a part of the "document," or whether they are merely helpful preambles to the substance of a document itself. In the typical case, preambles and headings are merely organizational guides, and do not control the meaning of a document. BLACK'S LAW DICTIONARY 736 "preamble" "heading," 1214 (8th ed. 2004). Since the statute is thus ambiguous as to whether the legislature intended larger headings to be the controlling feature

11

Case 4:06-ap-00106-JMM    Doc 245    Filed 05/16/07    Entered 05/16/07 14:42:26    Desc
Main Document    Page 11 of 14

when it comes to the font size, the court must conclude that such was not the legislative purpose. Instead, the more logical interpretation of the statute is to conclude that the warning should not be "buried in the fine print." BCI's font size in the substantive portion of the notice complies with the letter and spirit of the law.

The court concludes that the Trustee's and OSB's motions on this legal point will be denied, and BCI's motion will be granted.

### E. **Failure to Sign the Preliminary 20-day Notice**

Clearly, ARIZ. REV. STAT. § 33-992.01(D) requires a signature from an authorized person within a lien claimant's company to sign the preliminary 20-day notice. The statute requires any claimant to "follow substantially the following form . . . ." The form contains a signature line.

There is no question that BCI's representative did not sign the 20-day notice form. It was simply left blank. But, since BCI's name, address, contract amount, the words "concrete and labor" and the description of the land to be affected is contained on the document, as are all of the operative words required by statute, is that lack of an authorized signature on the preliminary 20-day notice enough to invalidate the lien? While this issue has many attributes of a close legal call, the court must ultimately find in favor of BCI on the point.

The analysis follows this path. Unlike the mechanic's lien itself, there is no requirement that the signature on the preliminary 20-day notice be acknowledged or that it be signed under penalty of perjury. Compare, ARIZ. REV. STAT. § 33-993(A). Because the preliminary 20-day notice is therefore significantly less formal, it has more of the attributes of a pure notice than that of a legally effective lien-creating instrument. Since its purpose is therefore to notify, and if all essential information consistent with such a notification is contained on the preliminary 20-day notice, then the substantial compliance purpose of the statute--notice--is effected. While the court is cognizant of the fact that reasonable minds could differ on this point, this court must decide in favor of BCI, and it does so in recognition of liberal and remedial purpose of the statutes.

12

Even without the signature of an authorized corporate party, the preliminary 20-day notice's purpose has been substantially complied with. Accordingly, the Trustee's and OSB's partial motions for summary judgment on this issue will be denied, and BCI's cross-motion thereon will be granted.

### F. Preliminary 20-day Notices Not Served on OSB

OSB contends that BCI failed to serve the preliminary 20-day notice upon it. This argument fails the summary judgment test for several reasons.

First, OSB has been or likely will be paid its entire debt as a secured creditor. Ample funds remain in the Trustee's account to accomplish this. 11 U.S.C. § 506. Therefore, OSB has no pecuniary interest in these lien claim issues. *See, e.g., Fondiller v. Robertson (In re Fondiller0*, 707 F.2d 441, 442 (9th Cir. 1983). It should therefore not be incurring unnecessary fees and costs at the expense of others. Its legal standing is tenuous.

Second, OSB has no litigation outstanding by which any party has yet formally challenged its lien, with the exception of the discrete parcel of land upon which RDC contends that it holds a senior lien claim.

Third, OSB has acknowledged that it has misplaced, lost, or destroyed any such documents that might have been sent to it, such as the instant preliminary 20-day notice. Therefore, it cannot claim that it never received notice. It cannot prove that fact one way or the other.

Fourth, OSB has apparently neglected to monitor its multi-million dollar loan, even though its loan documents impose a duty of cooperation and information-sharing between it and its borrowers, the Debtors. Thus, again, OSB cannot definitely state whether it did or did not know of the BCI lien.

Fifth, OSB has provided no affidavits of non-receipt. Nor, without paperwork in its files, could it. Even if OSB were to make such a claim, BCI could attempt to rebut it by affidavit. ARIZ. REV. STAT. § 33-992.02.

OSB's motion on this point will be denied, and judgment will be entered in BCI's favor.

13

## **RULING**

A separate order will be issued simultaneously with the issuance of this Memorandum Decision. FED. R. BANKR. P. 9021.

DATED: May 16 2007.

/s/ James M. Marlar
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE