
FILED

MAY 17 2007

U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TURNER-DUNN HOMES, INC., and others,<br><br>      Debtors.<br><br>BCI BEBOUT CONCRETE, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>TURNER-DUNN HOMES, INC., et al., and John Does 1-10,<br><br>      Defendants.<br><br>ROBERT P. ABELE, Chapter 11 Trustee,<br><br>      Third-Party Plaintiff,<br><br>vs.<br><br>SONORAN CONCRETE, LLC, an Arizona limited liability company; GALE CONTRACTOR SERVICES, a Florida corporation; CHAS ROBERTS AIR CONDITIONING, INC., an Arizona corporation; DEL MARTENSON DEVELOPMENT CORP., an Arizona corporation; TRUSSWAY, INC. WEST, an Arizona corporation; TRIPLE S FENCE CO., an Arizona corporation; RIGGS PLUMBING, LLC, an Arizona limited liability company; ALLIANCE LUMBER, LLC, an Arizona limited liability company; KAY CONSTRUCTION, INC., an Arizona corporation, PEAK CONSTRUCTION, INC., an Arizona corporation; DIVERSIFIED ROOFING CORP., an Arizona corporation; INTEGRATED STUCCO, INC., an Arizona corporation; MITCHELL ELECTRIC CO., INC., an Arizona corporation; A COMPANY PORTABLE RESTROOMS INC., an | Chapter 11<br><br>Case No. 4-06-bk-00961-JMM<br><br>(Jointly Administered With Case Nos.:<br>4-06-bk-00962-JMM; 4-06-bk-00963-JMM;<br>4-06-bk-00964-JMM; 4-06-bk-00965-JMM)<br><br>Adversary No. 4-06-ap-00106-JMM<br><br>**MEMORANDUM DECISION RE:**<br><br>**SUMMARY JUDGMENT (PARTIAL)**<br><br>**INVOLVING LIEN CLAIMANT**<br><br>┌─────────────────┐<br>│ **TRIPLE S FENCE** │<br>│ **COMPANY** │<br>└─────────────────┘ |

| | |
|---|---|
| 1 | Idaho corporation; JORDAN COMPANY; PACIFIC ) |
| | POOLS AND SPAS, LLC, an Arizona limited ) |
| 2 | liability company; MARICOPA MEADOWS ) |
| | HOMEOWNERS ASSOCIATION, an Arizona ) |
| 3 | corporation; SANDVICK EQUIPMENT & SUPPLY ) |
| | CO.; ESCO ELECTRIC WHOLESALE, INC.; RDC ) |
| 4 | CONSTRUCTION, INC., an Arizona corporation; ) |
| | DAYSPRING DEVELOPMENT, INC., an Arizona ) |
| 5 | corporation; OUTDOOR ENVIRONMENTAL ) |
| | SYSTEMS, INC aka OES, INC. dba RAINDANCE ) |
| 6 | SYSTEMS, an Arizona corporation; OHIO ) |
| | SAVINGS BANK, a federal savings bank; WRI ) |
| 7 | INVESTMENTS III, LLC, a Washington limited ) |
| | liability company; ANY UNKNOWN PARTIES IN ) |
| 8 | POSSESSION; UNKNOWN HEIRS AND ) |
| | DEVISEES OF ANY OF THE FOREGOING WHO ) |
| 9 | ARE DECEASED; and ABC ENTITIES 1-100, ) |
| | ) |
| 10 | _____Third- Party Defendants_____ ) |

## INTRODUCTION - PROCEDURE AND METHODOLOGY

The Trustee has filed motions for partial summary judgment against numerous mechanics' and materialmens' lien claimants, challenging on "statutorily deficient" or "facially inadequate" grounds, the preliminary or final recorded lien documents of such lien claimants. In some cases, the lien claimants have also filed for partial summary judgment on the same issues.

For administrative convenience, the court has dealt with each lien claimant separately, although many of the same legal issues may affect other lien claimants as well. For that reason, many of the court's discussions and analyses may be repeated in whole or in part in its various decisions. Separating the decisions, as to each lien claimant, will enable both the court and each affected party to focus on particularized issues or fact differences, and will also facilitate appellate review.

When discussing the motions for summary judgment, the court will consider the points made against the particular lien claimant, and will include the totality of challenges to the lien, whether made by the Trustee, Ohio Savings Bank ("OSB"), or WRI Investments III, LLC ("WRI"), alone or in combination with one another.

In the end, the court will have addressed all challenges to the liens presented by the motions, and will rule on each legal point. In some instances, factual issues which were unforeseen at the outset may present themselves, and if so, the court will indicate which issues are to be deferred for future hearings.

With one eye open to the appellate process, the court does not intend to combine any ruling with Rule 54(b) language, because, if further proceedings become necessary, the matter may not be ripe for final review until it is finally determined. This will save counsel and any reviewing court the expense and time in taking and deciding interlocutory appeals.

Another tool which the court will use is the attachment of an appendix to each decision, which will include each lien claimant's challenged lien documents. In this way, the parties, this court, and any reviewing court will have ready access to the operative documents involving each creditor. The appendix will also include the applicable Arizona statutes.

In some instances, a mechanic's lien claimant may have responded to the Trustee's motion and countered with its own summary judgment motion or partial summary judgment motion. When this procedure has occurred, the court will also rule on those issues unless the ruling is subsumed within the main decision.

To the extent that this decision requires refinement or further clarification, the court asks that the parties first convene a status hearing with the court prior to filing further pleadings on the decided issues. In that way, all parties can arrive at a unified method to further process the issues.

The court also understands that in many instances, the parties have not attached all or each of their claimed liens or notices. This is because all or each are essentially identical and a ruling on a particular legal issue is applicable across the board. Thus, the parties have selected samples for the court's review.

As noted from the bench, the court appreciates the excellent quality of the work product and arguments presented by all attorneys in this case. As all parties can appreciate, the issues presented were not simple ones, and the issues are important to the ultimate outcome of this case. For their efforts, the court thanks counsel in clearly focusing the issues.

# WHOM THIS DECISION AFFECTS

This decision involves the allegations made against Triple S Fence Company ("Triple S").

# ARIZONA LAW

In a bankruptcy case, property rights are determined by reference to state law. *Butner v. United States*, 440 U.S. 48 (1979). Bankruptcy courts have "core" jurisdiction to hear and determine issues involving the extent, validity, and priority of liens against an estate. 28 U.S.C. § 157(b)(2)(K).

Mechanics' and materialmen's liens are creatures of statute ARIZ. REV. STAT. § 33-981, *et seq*. Such statutes have existed in Arizona since statehood. *See, e.g. Arizona Eastern R.R. Co. v. Globe Hardware Co.*, 14 Ariz. 397, 400, 129 P. 1104, 1105 (1913) ("The primary object of our lien law is to insure to the laborer and materialman the payment of their accounts, and incidentally to protect the owner against the filing of liens by such persons against his property for services and material rendered and furnished the original contract."); *see also* CIVIL CODE 1913, § 3639. They exist principally to protect mechanics, materialmen, and those who furnish labor or supplies to another's land, thereby enhancing its value, from the dangers of non-payment. *See United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, 484, 4 P.3d 1022, 1027 (App. 2000); *Hayward Lumber & Inv. Co. v. Graham*, 104 Ariz. 103, 111, 449 P.2d 31, 39 (1968). These rights are "jealously protected," *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 515, 8 P.2d 256, 258 (1932), and when construing them the statutes must be liberally construed to effect their primary purpose. *See In re JWJ Contracting Co.*, 287 B.R. 501, 509-10 (9th Cir. BAP 2002) (construing Arizona's statutes), *aff'd*. 371 F.3d 1079 (9th Cir. 2004); *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 181, 370 P.2d 661, 664 (1962). While the statutes themselves appear, on the surface, to contain requirements which can be easily followed, the Arizona courts have held that substantial compliance with the statutes is sufficient to perfect a lien, provided that such compliance is not inconsistent with the legislative purpose. *See, e.g., Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 431, 561 P.2d 740, 755 (App. 1977); *Columbia Group, Inc. v. Jackson*, 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986); *MLM Constr. Co. v. Pace Corp.*, 172 Ariz. 226, 229, 386 P.2d 439, 442 (App. 1992); *Peterman-Donnelly Eng'rs & Contractors*

*Corp. v. First Nat'l Bank,* 2 Ariz. App. 321, 323, 408 P.2d 841, 843 (1966). While Arizona courts will, from time to time, describe the lien perfection process as one to be strictly followed, *see MLM Constr. Co.,* 172 Ariz. at 229, 836 P.2d at 442 (citing cases), the law's modern evolution has inevitably trended toward the substantial compliance model.

In addition to the protection of mechanics and materialmen, a secondary purpose of the law is to protect the property owner. *See, e.g., Arizona Gunite Builders, Inc. v. Continental Cas. Co.,* 105 Ariz. 99, 101, 459 P.2d 724, 726 (1969). The proper notification and recordation of a mechanic's lien serves to keep invalid or improper clouds on title from impairing an owner's rights to enjoy the benefits of ownership.

As for the specific procedure necessary for a lien claimant to perfect a lien, it must, within 20 days of first furnishing labor, professional services, materials, machinery, fixtures, or tools to the job site, prepare what is designated as a "preliminary twenty day notice" (hereinafter "preliminary 20-day notice") and serve it. ARIZ. REV. STAT. § 33-992.01. This statute was initially enacted in 1979, and has been amended five times since. Once the job is completed, the lien must be recorded within a specific period of time thereafter. ARIZ. REV. STAT. § 33-993.

Within each of these two statutes are contained numerous detailed requirements, some of which are at issue in the instant case. A copy of each of these statutes is included in the appendix to be filed.

<u>Appx. 1</u>    Challenged lien documents

<u>Appx. 2</u>    Statutes:

- Description of trust property; mailing address ARIZ. REV. STAT. § 33-802.
- Lien for labor, services, materials, etc., ARIZ. REV. STAT. § 33-981.
- Preliminary twenty day notice, ARIZ. REV. STAT. § 33-992.01
- Procedure to perfect lien, ARIZ. REV. STAT. § 33-993

## **CHALLENGES TO TRIPLE S' LIENS**

The current challenges to Triple S' liens fall into several categories:

    A.    Failure to provide legal description in the preliminary 20-day notices or liens themselves;

    B.    Failure to attach contract;

    C.    Preliminary 20-day notices failed to comply with font size requirements of ARIZ. REV. STAT. § 33-992.01(D);

    D.    Preliminary 20-day notices were not served on OSB.

Each will be discussed in turn.

### A. **Failure to Provide Legal Description**

The Trustee (this term includes the challenges also made by OSB and WRI) has stated that Triple S' mechanic's lien and preliminary 20-day notices failed to provide proper legal descriptions. In each of the exemplars, the properties to which Triple S furnished labor or materials is referred to as:

| | |
|---|---|
| Preliminary Notice: | McCartney Center Fiesta, 2859 N. Taylor Ln., Casa Grande, AZ, Inv. #97076, Lot 108, Pinal County |
| Mechanic's Lien: | Parcel AA at McCartney Center, Lot 108, Sec 35-5S-6E, 6313 square feet 0.14 acres, McCartney Center Fiesta, 2859 N. Taylor Ln., Casa Grande, AZ, Lot 108, County of Pinal |

| | |
|---|---|
| Preliminary Notice: | Maricopa County, Arizona, Meadows Ln and Sky Ln, Maricopa, AZ, Inv. No. 95480, "Celebration Series Maricopa Meadows" Lot 44 |

| | | |
|---|---|---|
| Mechanic's Lien: | County of Pinal "Maricopa Meadows" 45617 W. Sky Ln, Maricopa, AZ 85239 Lot 44 | |
| | Legal Description: Maricopa Meadows Parcel 7, Sec. 28-04S-03E Lot 44, 5382 square feet .12 acres | |

Moreover, the preliminary 20-day notice was attached to the mechanic's lien.

The Trustee's challenge merely states, as a conclusion of law or perhaps a statement of fact, that the liens failed to attach proper legal descriptions. However, the Trustee does not indicate the manner in which the lien's description is misleading, other than noting that the description of the liened property is inconsistent with the actual, "true" legal description. (Trustee's SOF para. F.) This argument may have some validity with regard to the second lien, above, but the issue is a factual one concerning notice. However, neither does OSB's motion contain a reference point for the court to measure the sufficiency of Triple S' lien.

The purpose of the statute's requirement for a "legal description," ARIZ. REV. STAT. § 33-993(A)(1) is for the owner of the affected property to know which parcel(s) are impacted by the claim of lien. This information can be conveyed in a variety of non-exclusive ways. *See, e.g., Ten Z's Inc. v. Perry*, 166 Ariz. 203, 801 P.2d 438, *rev. denied* (App. 1990); *S.K. Drywall, Inc. v. Developers Fin. Group, Inc.*, 165 Ariz. 588, 595-96, 799 P.2d 1362, 1368-69 (App. 1990) *vacated in part on other grounds*, 169 Ariz. 345, 819 P.2d 931 (1991); ARIZ. REV. STAT. § 33-802. Unfortunately, for purposes of summary judgment, there is no affidavit from any party which states that the location of the liened property <u>cannot</u> be found by reference to the descriptions contained in Triple S' lien notices, nor of the degree of difficulty, if any, in matching to the given descriptive choices to the affected parcel(s). (Compare, e.g., the same issues discussed in the BCI matter.) This issue requires more factual exploration and evidence. If notice is the key, the issue becomes whether the descriptions given match to the affected parcel. The title company obviously found the claimed liens. Is this adequate?

Therefore, neither side is entitled to summary judgment on this issue, and it remains for trial.

## B. Failure to Attach Contract

ARIZ. REV. STAT. § 33-993(A)(3) requires that, in order to perfect a lien, the notice and claim of lien "shall contain . . . [a] statement of the terms, time given and conditions of the contract, if it is oral, or a copy of the contract, if it is written."

In this case, Triple S attached copies of invoices for block fence/gate. They were dated April and June, 2006. (Ex. 11.) The contract itself (Tee Ex. P) is a standard contract prepared by the Debtors, and it contains no specific details as to the work to be done except in general terms. There is no total price, no unit price, no dates of performance, nor other specifics as to the work to be performed by a contractor. In short, the invoices attached to the mechanic's lien in this instance are complete enough to withstand summary judgment, and they certainly give more information than the boilerplate standard form contract. *Peterman-Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank,* 2 Ariz. App. 321, 323, 408 P.2d 841, 843 (1966). A trial is required on whether any party was misled.

Therefore, the Trustee's motion on this issue will be denied.

## C. Font Size

The Trustee and OSB maintain that Triple S' preliminary 20-day notices failed to conform to the statutory requirement that certain required warning language "be in type at least as large as the largest type otherwise on the document." ARIZ. REV. STAT. § 33-992.01(D).

An unaided view of the preliminary 20-day notices in this case reveal actual compliance. The font size is as large as the largest pre-printed type font on the form. This constitutes substantial compliance with the statute. How the objecting parties can contend otherwise is a mystery.

Accordingly, OSB's motion for summary judgment on this point will be denied.

### D. Preliminary 20-day Notices Were Not Served on OSB

OSB contends that it did not receive copies of the preliminary 20-day notices. From the exhibits submitted, this would appear to be the case, at least on the surface.

But whether OSB actually received them, or notice of them, is apparently unknown, because OSB has conceded that its records in this regard have been misplaced, lost or destroyed, and are unavailable. Whether OSB properly monitored its loan, or turned a blind eye toward its Arizona customer, remains an issue for trial.

And if, ultimately, it is indeed true that the liens were never served on OSB, the parties will need to brief the court on the legal effect of such omission. The parties will be required to address the statute's silence on the point, as it affects the actual lien. Prejudice is also an issue.

Additionally, the parties will have to explore the impact of the Debtor's failure to correct the clear inaccuracies in the Triple S preliminary 20-day notices, when Triple S wrote the word "None" in answer to the question of who the lender or reputed lender was. At that point, the duty to correct the inaccuracy immediately shifted to the Debtors, pursuant to ARIZ. REV. STAT. § 33-992.01(I) and (J). Can a borrower and a lender collude to ignore duties imposed by statutes, and thereby deprive an innocent materialman of a lien, simply by failing to correct an inaccuracy? Can an owner do so singly, without collusion? Does a lender, with whom a materialman has no privity of contract, benefit from a bankrupt borrower's failure to follow the statute's requirement to correct inaccuracies? Did the Arizona legislature intend to deprive materialmen of valid liens in such an instance? Must the value of the property's enhancement be considered?

These questions, and many more are deserving of substantially more legal thought than has heretofore been given to these interesting statutes. As a result, the court would not be dispensing substantial justice unless it denied the current fairly superficial motion for summary judgment on this point, and required the parties and itself to delve far deeper into these issues.

Therefore, OSB's partial motion for summary judgment on the point at issue must, and will be denied.

**RULING**

A separate order will be issued simultaneously with the issuance of this Memorandum Decision. FED. R. BANKR. P. 9021.

DATED: May 17 2007.

/s/ James M. Marlar
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE