

FILED
MAY 17 2007
U.S. BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TURNER-DUNN HOMES, INC., and others,<br><br>                 Debtors.<br><br>BCI BEBOUT CONCRETE, INC.,<br><br>                 Plaintiff,<br><br>vs.<br><br>TURNER-DUNN HOMES, INC., et al., and John Does 1-10,<br><br>                 Defendants.<br><br>ROBERT P. ABELE, Chapter 11 Trustee,<br><br>                 Third-Party Plaintiff,<br><br>vs.<br><br>SONORAN CONCRETE, LLC, an Arizona limited liability company; GALE CONTRACTOR SERVICES, a Florida corporation; CHAS ROBERTS AIR CONDITIONING, INC., an Arizona corporation; DEL MARTENSON DEVELOPMENT CORP., an Arizona corporation; TRUSSWAY, INC. WEST, an Arizona corporation; TRIPLE S FENCE CO., an Arizona corporation; RIGGS PLUMBING, LLC, an Arizona limited liability company; ALLIANCE LUMBER, LLC, an Arizona limited liability company; KAY CONSTRUCTION, INC., an Arizona corporation, PEAK CONSTRUCTION, INC., an Arizona corporation; DIVERSIFIED ROOFING CORP., an Arizona corporation; INTEGRATED STUCCO, INC., an Arizona corporation; MITCHELL ELECTRIC CO., INC., an Arizona corporation; A COMPANY PORTABLE RESTROOMS INC., an | Chapter 11<br><br>Case No. 4-06-bk-00961-JMM<br><br>(Jointly Administered With Case Nos.: 4-06-bk-00962-JMM; 4-06-bk-00963-JMM; 4-06-bk-00964-JMM; 4-06-bk-00965-JMM)<br><br>Adversary No. 4-06-ap-00106-JMM<br><br>**MEMORANDUM DECISION RE:**<br><br>**SUMMARY JUDGMENT (PARTIAL)**<br><br>**INVOLVING LIEN CLAIMANT**<br><br>**DEL MARTENSON**<br>**DEVELOPMENT CO.** |

| | |
|---|---|
| Idaho corporation; JORDAN COMPANY; PACIFIC POOLS AND SPAS, LLC, an Arizona limited liability company; MARICOPA MEADOWS HOMEOWNERS ASSOCIATION, an Arizona corporation; SANDVICK EQUIPMENT & SUPPLY CO.; ESCO ELECTRIC WHOLESALE, INC.; RDC CONSTRUCTION, INC., an Arizona corporation; DAYSPRING DEVELOPMENT, INC., an Arizona corporation; OUTDOOR ENVIRONMENTAL SYSTEMS, INC aka OES, INC. dba RAINDANCE SYSTEMS, an Arizona corporation; OHIO SAVINGS BANK, a federal savings bank; WRI INVESTMENTS III, LLC, a Washington limited liability company; ANY UNKNOWN PARTIES IN POSSESSION; UNKNOWN HEIRS AND DEVISEES OF ANY OF THE FOREGOING WHO ARE DECEASED; and ABC ENTITIES 1-100, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Third- Party Defendants | ) |

## **INTRODUCTION - PROCEDURE AND METHODOLOGY**

The Trustee has filed motions for partial summary judgment against numerous mechanics' and materialmen's lien claimants, challenging on "statutorily deficient" or "facially inadequate" grounds, the preliminary or final recorded lien documents of such lien claimants. In some cases, the lien claimants have also filed for partial summary judgment on the same issues.

For administrative convenience, the court has dealt with each lien claimant separately, although many of the same legal issues may affect other lien claimants as well. For that reason, many of the court's discussions and analyses may be repeated in whole or in part in its various decisions. Separating the decisions, as to each lien claimant, will enable both the court and each affected party to focus on particularized issues or fact differences, and will also facilitate appellate review.

When discussing the motions for summary judgment, the court will consider the points made against the particular lien claimant, and will include the totality of challenges to the lien, whether made by the Trustee, Ohio Savings Bank ("OSB"), or WRI Investments III, LLC ("WRI"), alone or in combination with one another.

In the end, the court will have addressed all challenges to the liens presented by the motions, and will rule on each legal point. In some instances, factual issues which were unforeseen at the outset may present themselves, and if so, the court will indicate which issues are to be deferred for future hearings.

With one eye open to the appellate process, the court does not intend to combine any ruling with Rule 54(b) language, because, if further proceedings become necessary, the matter may not be ripe for final review until it is finally determined. This will save counsel and any reviewing court the expense and time in taking and deciding interlocutory appeals.

Another tool which the court will use is a appendix to each decision, which will include each lien claimant's challenged lien documents. Due to size, each appendix will be separately filed within a few days subsequent to issuance of each decision. In this way, the parties, this court, and any reviewing court will having ready access to the operative documents involving each creditor. The appendix will also include the applicable Arizona statutes.

In some instances, a mechanic's lien claimant may have responded to the Trustee's motion and countered with its own summary judgment motion or partial summary judgment motion. When this procedure has occurred, the court will also rule on those issues unless the ruling is subsumed within the main decision.

To the extent that this decision requires refinement or further clarification, the court asks that the parties first convene a status hearing with the court prior to filing further pleadings on the decided issues. In that way, all parties can arrive at a unified method to further process the issues.

The court also understands that in many instances, the parties have not attached all or each of their claimed liens or notices. This is because all or each are essentially identical and a ruling on a particular legal issue is applicable across the board. Thus, the parties have selected samples for the court's review.

As noted from the bench, the court appreciates the excellent quality of the work product and arguments presented by all attorneys in this case. As all parties can appreciate, the issues presented were not simple ones, and the issues are important to the ultimate outcome of this case. For their efforts, the court thanks counsel in clearly focusing the issues.

## WHOM THIS DECISION AFFECTS

This decision involves the allegations made against Del Martenson Development Co.

## ARIZONA LAW

In a bankruptcy case, property rights are determined by reference to state law. *Butner v. United States*, 440 U.S. 48 (1979). Bankruptcy courts have "core" jurisdiction to hear and determine issues involving the extent, validity, and priority of liens against an estate. 28 U.S.C. § 157(b)(2)(K).

Mechanics' and materialmen's liens are creatures of statute. ARIZ. REV. STAT. § 33-981, *et seq.* Such statutes have existed in Arizona since statehood. *See, e.g. Arizona Eastern R.R. Co. v. Globe Hardware Co.*, 14 Ariz. 397, 400, 129 P. 1104, 1105 (1913) ("The primary object of our lien law is to insure to the laborer and materialman the payment of their accounts, and incidentally to protect the owner against the filing of liens by such persons against his property for services and material rendered and furnished the original contract."); *see also* CIVIL CODE 1913, § 3639. They exist principally to protect mechanics, materialmen, and those who furnish labor or supplies to another's land, thereby enhancing its value, from the dangers of non-payment. *See United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, 484, 4 P.3d 1022, 1027 (App. 2000); *Hayward Lumber & Inv. Co. v. Graham*, 104 Ariz. 103, 111, 449 P.2d 31, 39 (1968). These rights are "jealously protected," *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 515, 8 P.2d 256, 258 (1932), and when construing them the statutes must be liberally construed to effect their primary purpose. *See In re JWJ Contracting Co.*, 287 B.R. 501, 509-10 (9th Cir. BAP 2002) (construing Arizona's statutes), *aff'd.* 371 F.3d 1079 (9th Cir. 2004); *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 181, 370 P.2d 661, 664 (1962). While the statutes themselves appear, on the surface, to contain requirements which can be easily followed, the Arizona courts have held that substantial compliance with the statutes is sufficient to perfect a lien, provided that such compliance is not inconsistent with the legislative purpose. *See, e.g., Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 431, 561 P.2d 740, 755 (App. 1977); *Columbia Group, Inc. v. Jackson*, 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986); *MLM Constr. Co. v. Pace Corp.*, 172 Ariz. 226, 229, 386 P.2d 439, 442 (App. 1992); *Peterman-Donnelly Eng'rs & Contractors*

*Corp. v. First Nat'l Bank,* 2 Ariz. App. 321, 323, 408 P.2d 841, 843 (1965). While Arizona courts will, from time to time, describe the lien perfection process as one to be strictly followed, *see MLM Constr. Co.,* 172 Ariz. at 229, 836 P.2d at 442 (citing cases), the law's modern evolution has inevitably trended toward the substantial compliance model.

In addition to the protection of mechanics and materialmen, a secondary purpose of the law is to protect the property owner. *See, e.g., Arizona Gunite Builders, Inc. v. Continental Cas. Co.,* 105 Ariz. 99, 101, 459 P.2d 724, 726 (1969). The proper notification and recordation of a mechanic's lien serves to keep invalid or improper clouds on title from impairing an owner's rights to enjoy the benefits of ownership.

As for the specific procedure necessary for a lien claimant to perfect a lien, it must, within 20 days of first furnishing labor, professional services, materials, machinery, fixtures, or tools to the job site, prepare what is designated as a "preliminary twenty day notice" (hereinafter "preliminary 20-day notice") and serve it. ARIZ. REV. STAT. § 33-992.01. This statute was initially enacted in 1979, and has been amended five times since. Once the job is completed, the lien must be recorded within a specific period of time thereafter. ARIZ. REV. STAT. § 33-993.

Within each of these two statutes are contained numerous detailed requirements, some of which are at issue in the instant case. A copy of each of these statutes is included in the appendix to be filed.

<u>Appx. 1</u>   Challenged lien documents

<u>Appx. 2</u>   Statutes:

- Lien for labor services, materials, etc., ARIZ. REV. STAT. § 33-981
- Preliminary twenty day notice, ARIZ. REV. STAT. § 33-992.01
- Proof of mailing, ARIZ. REV. STAT. § 33-992.02
- Procedure to perfect lien, ARIZ. REV. STAT. § 33-993

## **CHALLENGES TO DEL MARTENSON'S LIEN**

The current challenges to Del Martenson's lien fall into several categories:

A. Failure to provide legal description in the preliminary 20-day notice or lien itself;
B. Failure to attach contract;
C. Preliminary 20-day notices were not served on OSB; and
D. Preliminary 20-day notices failed to comply with font size requirements of ARIZ. REV. STAT. § 33-992.01(D).

Each will be discussed in turn. Before doing so, however, certain preliminary matters must be addressed.

## MOTION TO STRIKE OSB'S PLEADINGS

Del Martenson has moved to strike OSB's pleadings relating to its partial motion for summary judgment on several grounds. Since the court has, and will rule on the merits of these motions (as they apply to Del Martenson) favorably, the motions to strike will be denied as moot.

However, the Del Martenson position that OSB has no legal standing is also of concern to the court, as is OSB's arguments concerning lack of service of the preliminary 20-day notices, especially since OSB stipulated in open court on May 2, 2007, that it had misplaced, lost, or destroyed any such instruments, and in any event cannot produce them.

Del Martenson's position, in its motion to strike, is a direct challenge to OSB's standing. While more briefing on this issue is required, several things appear to be important to such a contention.

First, OSB has been or likely will be paid its entire debt as a secured creditor. Ample funds remain in the Trustee's account to accomplish this. 11 U.S.C. § 506. Therefore, OSB has no pecuniary interest in these lien claim issues. *See, e.g., Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). It should therefore not be incurring unnecessary fees and costs at the expense of others. Its legal standing is tenuous.

Second, OSB has no litigation outstanding by which any party has yet formally challenged its lien, with the exception of the discrete parcel of land upon which RDC contends that it holds a senior lien claim.

Third, OSB has acknowledged that it has misplaced, lost, or destroyed any such documents that might have been sent to it, such as the instant preliminary 20-day notices. Therefore, it cannot claim that it never received notice. It cannot prove that fact one way or the other.

Fourth, OSB has apparently neglected to monitor its multi-million dollar loan, even though its loan documents impose a duty of cooperation and information-sharing between it and its borrowers, the Debtors. Thus, again, OSB cannot definitely state whether it did or did not know of the Del Martenson lien.

Fifth, OSB has provided no affidavits of non-receipt. Nor, without paperwork in its files, could it. Even if OSB were to make such a claim, Del Martenson could attempt to rebut it by affidavit. ARIZ. REV. STAT. § 33-992.02.

Thus, for now, Del Martenson's motion to strike OSB's pleadings will be denied, without prejudice to more formal and complete investigation into whether OSB has any legal standing to be heard in this adversary proceeding.

The court will now turn to the merits of the various arguments relating to the partial motions for summary judgment.

### A. Failure to Provide Legal Description

The Trustee (this term includes the challenges also made by OSB and WRI) has stated that Del Martenson's mechanic's lien and preliminary 20-day notice failed to provide a proper legal description. The exemplar provided, Ex. 4, contains the following information:

> 4. The real **PROPERTY** sought to be charged with this Lien is the following described parcel(s) of land, and includes any and all structures and improvements located thereon:
>    a. The Address or Location of Property.
>       2872 N TAYLOR LN
>       CASA GRANDE, PINAL COUNTY
>    b. The Legal Description of the land and improvements to be charged with the lien is:
>       LOT 27
>       PARCEL AA AT MCCARTNEY CENTER
>       APN: 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

The legal issue to be addressed here is whether certain of the claimants' liens provided "the legal description of the lands and improvements to be charged with a lien." ARIZ. REV. STAT. § 33-993(A)(1).

At the outset, it is important to note that the preliminary 20-day notice statute contains language that is broader and more forgiving. It states, at ARIZ. REV. STAT. § 33-992.01(C)(4), that the lien claimant provide to the owner and others:

> A legal description, subdivision plat, street address, location with respect to commonly known roads or other landmarks in the area or any other description of the jobsite sufficient for identification.

By the same token, if the owner is required to furnish information to a potential lien claimant, all that is required of it is to furnish information of the same type. ARIZ. REV. STAT. § 33-992.01(I)(1).

Then, when and if a lien is later filed, the lien claimant is charged with placing, in the recorded notice, "the legal description of the lands and improvements to be charged with a lien." ARIZ. REV. STAT. § 33-993(A)(1).

As a general rule, Arizona courts have construed the mechanic's lien statutes liberally, in order to accomplish their remedial purpose. *Gene McVety, Inc. v. Don Grady Homes, Inc.*, 119 Ariz. 482, 486, 581 P.2d 1132, 1136 (1978). All that is required, with respect to a legal description is substantial compliance. *Smith Pipe & Steel Co. v. Mead*, 130 Ariz. 150, 151, 634 P.2d 962, 963 (1981). This principle will not assist one who completely misses the mark, *see, e.g., id.*, but it will not penalize a party who, through another creative description, can direct an owner or interested party to the affected parcel. *See id.; see also James Weller, Inc. v. Hansen*, 21 Ariz. App. 217, 517 P.2d 1110 (1973); *Adams Tree Service, Inc. v. Transamerica Title Ins. Co.*, 20 Ariz. App. 214, 511 P.2d 658 (1973). These flexible principles do not offend the statute's purpose, which is to give notice and other information sufficient to locate and identify the affected parcel.

This premise is not altogether, nor entirely, subject to the precision focus needed to sustain a summary judgment motion. Instead, each case and description inherently lends itself to factual inquiry.

Boiled to its essence, the Trustee and OSB maintain that the term "legal description" in ARIZ. REV. STAT. § 33-993(A)(1)'s lien requirement lends itself but to a single, exact, precise and matching, perfectly correct legal description. And, if it does not do so, the lien fails.

That argument might, to some circles, have appeal, were it not for the entire body of case law surrounding the interpretation of the mechanic's lien laws, as best summed up by Judge Howard in *Lewis v. Midway Lumber*, 114 Ariz. at 431, 561 P.2d at 755:

> ... the steps required by A.R.S. § 33-993 to impose the lien must be followed but in determining what these steps are the court will give the words a meaning which is reasonable, consistent with all the language used, and conducive to the purpose to be accomplished by the enactment of the statute. Thus, substantial compliance not inconsistent with the legislative purpose is sufficient. *Leeson v. Bartol, supra.*

This court must also consider the most basic of the general rules of statutory construction, codified by Arizona's legislature:

> Statutes shall be liberally construed to effect their outcomes and to promote justice.

ARIZ. REV. STAT. § 1-211(B).

Within this construct, then, a court is not imbued with a roving commission to do equity, but it is required to consider the totality of the circumstances surrounding any claim of lien, always mindful of the specifics required, and the purposes to be accomplished thereby.

In short, issues such as what constitutes a proper legal description, for lien perfection purposes, is a mixed question of fact and law. Therefore, summary judgment on such an issue is inappropriate. A trial must be had so that all relevant and material information may be fully presented by the parties and considered by the court.

Accordingly, the partial motions for summary judgment on this issue will be denied.

## B. Failure to Attach Contract

ARIZ. REV. STAT. § 33-993(A)(3) requires that, in order to perfect a lien, the notice and claim of lien "shall contain . . . [a] statement of the terms, time given and conditions of the contract, if it is oral, or a copy of the contract, if it is written."

In this case, Del Martenson attached a copy of its invoices for framing services. Each was dated and referred to exact purchase orders, amount, the basic floor plan involved, any additions, and the Debtors' construction start order. The contract itself is a standard contract prepared by the Debtors, and it contains no specific details as to the work to be done except in the most general terms. In that standard form, there is no total price, no unit price, no dates of performance, nor other specifics as to the work to be performed by Del Martenson. In short, the information attached to the mechanic's lien is complete enough to satisfy the statute's requirement, and it certainly gives more information than the boilerplate standard form contract. *See Peterman-Donnelly Eng'rs v. First Nat. Bank*, 2 Ariz. App. 321, 323-24, 408 P.2d 841, 843-44 (1966). The invoice and construction start documents substantially comply with the statute's purpose.

It is also important to note that although Del Martenson signed the Debtor's standard form contract, apparently the Debtor itself never did so. Affidavit of Scott Martenson, para. 3. Neither the Trustee nor OSB has provided a fully executed contract between the parties. Thus, Del Martenson's information, attached to its lien claim, satisfies the statute's requirement of the "terms, time given and conditions" of an oral contract. ARIZ. REV. STAT. § 33-993(A)(3).

Therefore, the Trustee's motion on this issue will be denied.

## C. Preliminary 20-day Notices Were Not Served on OSB

Since OSB's legal standing has been questioned above, the court will now turn to the merits of this argument.

OSB maintains that it was not served with Del Martenson's preliminary 20-day notice. This argument cannot support summary judgment for numerous reasons.

First, OSB has acknowledged that it has misplaced, lost, or destroyed any such documents that might have been sent to it, such as the instant preliminary 20-day notice. Therefore, it cannot claim that it never received notice. It cannot prove that fact one way or the other.

Second, OSB has apparently neglected to monitor its multi-million dollar loan, even though its loan documents impose a duty of cooperation and information-sharing between it and its borrowers, the Debtors. Thus, again, OSB cannot definitely state whether it did or did not know of Del Martenson's lien.

Third, OSB has provided no affidavits of non-receipt. Nor, without paperwork in its files, could it. Even if OSB were to make such a claim, Del Martenson could attempt to rebut it by affidavit. ARIZ. REV. STAT. § 33-992.02.

These factual issues aside, though, brings the inquiry to its real point--what is the true legislative purpose of ARIZ. REV. STAT. § 33-992.01(B)?

The statute requires a mechanic or materialman, in order to eventually perfect a statutory lien against another's property, for whose benefit he has labored and/or whose property is otherwise improved, to serve preliminary notices within 20 days after beginning work. ARIZ. REV. STAT. § 33-992.01(C). The preliminary 20-day notice must contain certain information, and be served in some manner upon the owner, reputed owner, original contractor or reputed contractor, the construction lender, if any, or reputed construction lender, if any, and the person with whom the claimant has contracted. ARIZ. REV. STAT. § 33-992.01(B). "Construction lender" includes the beneficiary under a deed of trust, such as OSB, whose loan has been used to defray the construction costs. ARIZ. REV. STAT. § 33-992.01(A)(1).

Now comes the rub. If there are inaccuracies contained within the preliminary 20-day notice, the "owner or other interested party" which did receive the preliminary 20-day notice is required to inform the lien claimant with "all information necessary to correct any inaccuracies in the notice . . . or lose as a defense any inaccuracy. . . ." ARIZ. REV. STAT. § 33-992.01(D).

Sections I and J of the same statute impose a duty on those receiving the information to communicate with the lien claimant. But if, as here, the owner ignores this duty, and if the claimant has listed the wrong construction lender, what is the legal effect? According to OSB, the lien which is eventually recorded is invalid as to it. However, there is no statute to support OSB's argument on the effect of such an omission. When one considers that the purpose of the statute is to protect the lien rights of

11

mechanics and materialmen, then what legislative purpose is served by setting traps for giving notice to those with whom the claimant has never dealt, who may be many states away, be faceless on the project, and whose owner (who rightly did receive notice) ignores the duty to convey to the lien claimant the accurate information? This statute was not written to benefit construction lenders. It was written to benefit lien claimants and owners. No Arizona case or statute has been written to deny a lien claimant of his/her/its lawful rights to the substantial benefit of a lender, in a circumstance similar to that presented here.

In the instant case, Del Martenson made a good faith effort to list the construction lender which it believed was the proper party, and so noted it on the preliminary 20-day notice. It listed "W.R.I. Investments III LLC." Even if it was wrong (about which no one advised it), it did its best to comply with the statute. The failure of others in their duties to keep the lien claimant properly advised, under the statute, does not have the legal effect of invalidating an otherwise effective mechanic's and materialmen's lien claim.

Here, Del Martenson did what the statute required of it. Neither the owner, nor WRI, apparently made any effort to correct the inaccuracies concerning who the construction lender was, despite the statutory duty to do so. Now, OSB seeks to benefit from another's failure to do what it was required to do. Considering the statute's overall purpose, this court agrees with the reasoning of California's appellate court in *Industrial Asphalt, Inc. v. Garrett Corp.*, 180 Cal. App. 3d 1001, 226 Cal. Rptr. 17 (1986). There, the affected <u>owner</u> was properly served with a preliminary twenty day notice, but the bankrupt <u>contractor</u> to whom the claimant had supplied the material was not. The court held the lien claimant's failure to serve the contractor did not invalidate the lien. It stated:

> We see no reason, <u>in the absence of prejudice</u> to the property owner ... why the subcontractor's failure to serve notice upon an original contractor should render unenforceable a lien against an owner who *did* receipt proper notice.

*Id.* 180 Cal. at 1007, 226 Cal Rptr. at 20 (emphasis supplied).

The similarities and reasoning of that case weighs against OSB. It is not entitled to invalidate a lien of a mechanic or materialman who complied with the statute. OSB can look to its borrower for satisfaction.

It is evident that resolution of this issue is a mixed question of fact and law, involving, among other things, proof of actual prejudice.

OSB has therefore failed to show that it is entitled to summary judgment on this issue, and therefore its motion will be denied.

### D. <u>Font Size</u>

OSB maintains that Del Martenson's preliminary notice failed to conform to the statutory requirement that certain required warning language "be in type at least as large as the largest type otherwise on the document." ARIZ. REV. STAT. § 33-992.01(D).

An unaided view of the preliminary lien notice in this case reveals actual compliance. The font size is as large as the largest type font on the pages, excluding the heading "Arizona Preliminary Twenty Day Notice."

There is no statutory requirement that the required words be either entirely capitalized, nor placed in bold-face print. Yet, Del Martenson's compliance language was nonetheless in bold-face type. Thus, with the sole exception of the document's header, as noted above, the document complies as a matter of law. In fact, what actually occurs is an optical illusion. Because the required wording is in both upper and lower case, it may <u>appear</u> to be smaller than those clauses which are written in all capital letters. But the court, assisted by a magnifying glass and a ruler, concluded that the capital letters are actually <u>the same size</u>. Only because some letters are in lower case lettering does it perhaps appear smaller. In reality, it is in the same type style. Moreover, even the required language in the statute itself, ARIZ. REV. STAT. § 33-992.01(D), is written in upper and lower case letters. Had the legislature wished for this particular warning to be in all caps, it would have said so, or the statute itself would be written thus.

This, then, brings us to whether the larger header language, quoted above, is meant to set the standard for the type size contained within the warning.

Were one to split hairs, it could perhaps be argued (although no one has) that the challenged lettering is not as large as the document's headings. But then one would be compelled to analyze whether headings constitute a part of the "document," or whether they are merely helpful preambles to the substance

Case 4:06-ap-00106-JMM    Doc 256    Filed 05/17/07    Entered 05/17/07 14:50:06    Desc
Main Document    Page 13 of 15

of a document itself. In the typical case, preambles and headings are merely organizational guides, and do not control the meaning of a document. BLACK'S LAW DICTIONARY 736 "preamble" "heading," 1214 (8th ed. 2004). Since the statute is thus ambiguous as to whether the legislature intended larger headings to be the controlling feature when it comes to the font size, the court must conclude that such was not the legislative purpose. Instead, the more logical interpretation of the statute is to conclude that the warning should not be "buried in the fine print." Del Martenson's font size in the substantive portion of the notice complies with the letter and spirit of the law. In considering size, the header and other preambles are to be disregarded. Only the body of the substantive text controls.

The court takes aid and comfort in reaching this decision concerning "preambles" and "headings" by finding that OSB's own Loan Agreement, at para. 21.9, p. 42, is in accord. That paragraph states:

> 21.9 <u>Captions</u>. The captions, headings and titles of the sections, subsections, paragraphs and subdivisions of this Agreement are for convenience of reference only, and shall not limit or otherwise affect any of the terms of this Agreement.

OSB's own documents support the court's conclusion that affected persons or entities are charged with reading the <u>substantive contents</u> of a preliminary 20-day notice, and not just relying on headings or titles.

One final note on this point, before we depart. In order to satisfy itself as to the print size, the court used a magnifying glass and ruler. It concluded that the operative fonts were the same size. But is this the type of inquiry which the legislature intended? Does that degree of precision satisfy ARIZ. REV. STAT. § 1-211(B)'s mandate that statutes be liberally construed to effect their objects and promote justice? Should a more precise, forensic analysis with mathematical instruments of measurement dictate whether a preliminary lien notice satisfies ARIZ. REV. STAT. § 33-992.01(D)? The answers to these questions would clearly appear to be "no." At some point, logic and reason must intervene so that a statute's purpose is not reduced to an absurd exercise.

Del Martenson's prelminary lien notices satisfy the statute's size requirement.

Therefore, the Trustee's and OSB's motions on this legal point will be denied.

## **RULING**

A separate order will be issued simultaneously with the issuance of this Memorandum Decision. FED. R. BANKR. P. 9021.

DATED this 17 day of May, 2007.

*/s/ James M. Marlar*
JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE