# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TURNER-DUNN HOMES, INC., and others,<br><br>                  Debtors.<br><br>BCI BEBOUT CONCRETE, INC.,<br><br>                  Plaintiff,<br><br>vs.<br><br>TURNER-DUNN HOMES, INC., et al., and John Does 1-10,<br><br>                  Defendants.<br><br>ROBERT P. ABELE, Chapter 11 Trustee,<br><br>                  Third-Party Plaintiff,<br><br>vs.<br><br>SONORAN CONCRETE, LLC, an Arizona limited liability company; GALE CONTRACTOR SERVICES, a Florida corporation; CHAS ROBERTS AIR CONDITIONING, INC., an Arizona corporation; DEL MARTENSON DEVELOPMENT CORP., an Arizona corporation; TRUSSWAY, INC. WEST, an Arizona corporation; TRIPLE S FENCE CO., an Arizona corporation; RIGGS PLUMBING, LLC, an Arizona limited liability company; ALLIANCE LUMBER, LLC, an Arizona limited liability company; KAY CONSTRUCTION, INC., an Arizona corporation, PEAK CONSTRUCTION, INC., an Arizona corporation; DIVERSIFIED ROOFING CORP., an Arizona corporation; INTEGRATED STUCCO, INC., an Arizona corporation; MITCHELL ELECTRIC CO., INC., an Arizona corporation; A COMPANY PORTABLE RESTROOMS INC., an | Chapter 11<br><br>Case No. 4-06-bk-00961-JMM<br><br>(Jointly Administered With Case Nos.:<br>4-06-bk-00962-JMM; 4-06-bk-00963-JMM;<br>4-06-bk-00964-JMM; 4-06-bk-00965-JMM)<br><br>Adversary No. 4-06-ap-00106-JMM<br><br>**MEMORANDUM DECISION RE:**<br><br>**SUMMARY JUDGMENT (PARTIAL)**<br><br>**INVOLVING LIEN CLAIMANT**<br><br>**ALLIANCE LUMBER, LLC**<br><br>**KAY CONSTRUCTION, INC.** |

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10 | Idaho corporation; JORDAN COMPANY; PACIFIC )<br>POOLS AND SPAS, LLC, an Arizona limited )<br>liability company; MARICOPA MEADOWS )<br>HOMEOWNERS ASSOCIATION, an Arizona )<br>corporation; SANDVICK EQUIPMENT & SUPPLY )<br>CO.; ESCO ELECTRIC WHOLESALE, INC.; RDC )<br>CONSTRUCTION, INC., an Arizona corporation; )<br>DAYSPRING DEVELOPMENT, INC., an Arizona )<br>corporation; OUTDOOR ENVIRONMENTAL )<br>SYSTEMS, INC aka OES, INC. dba RAINDANCE )<br>SYSTEMS, an Arizona corporation; OHIO )<br>SAVINGS BANK, a federal savings bank; WRI )<br>INVESTMENTS III, LLC, a Washington limited )<br>liability company; ANY UNKNOWN PARTIES IN )<br>POSSESSION; UNKNOWN HEIRS AND )<br>DEVISEES OF ANY OF THE FOREGOING WHO )<br>ARE DECEASED; and ABC ENTITIES 1-100, )<br>     )<br>       Third- Party Defendants      ) |

## INTRODUCTION - PROCEDURE AND METHODOLOGY

The Trustee has filed motions for partial summary judgment against numerous mechanics' and materialmen's lien claimants, challenging on "statutorily deficient" or "facially inadequate" grounds, the preliminary or final recorded lien documents of such lien claimants. In some cases, the lien claimants have also filed for partial summary judgment on the same issues.

For administrative convenience, the court has dealt with each lien claimant separately, although many of the same legal issues may affect other lien claimants as well. For that reason, many of the court's discussions and analyses may be repeated in whole or in part in its various decisions. Separating the decisions, as to each lien claimant, will enable both the court and each affected party to focus on particularized issues or fact differences, and will also facilitate appellate review.

When discussing the motions for summary judgment, the court will consider the points made against the particular lien claimant, and will include the totality of challenges to the lien, whether made by the Trustee, Ohio Savings Bank ("OSB"), or WRI Investments III, LLC ("WRI"), alone or in combination with one another.

In the end, the court will have addressed all challenges to the liens presented by the motions, and will rule on each legal point. In some instances, factual issues which were unforeseen at the outset may present themselves, and if so, the court will indicate which issues are to be deferred for future hearings.

With one eye open to the appellate process, the court does not intend to combine any ruling with Rule 54(b) language, because, if further proceedings become necessary, the matter may not be ripe for final review until it is finally determined. This will save counsel and any reviewing court the expense and time in taking and deciding interlocutory appeals.

Another tool which the court will use is a appendix to each decision, which will include each lien claimant's challenged lien documents. Due to size, each appendix will be separately filed within a few days subsequent to issuance of each decision. In this way, the parties, this court, and any reviewing court will having ready access to the operative documents involving each creditor. The appendix will also include the applicable Arizona statutes.

In some instances, a mechanic's lien claimant may have responded to the Trustee's motion and countered with its own summary judgment motion or partial summary judgment motion. When this procedure has occurred, the court will also rule on those issues unless the ruling is subsumed within the main decision.

To the extent that this decision requires refinement or further clarification, the court asks that the parties first convene a status hearing with the court prior to filing further pleadings on the decided issues. In that way, all parties can arrive at a unified method to further process the issues.

The court also understands that in many instances, the parties have not attached all or each of their claimed liens or notices. This is because all or each are essentially identical and a ruling on a particular legal issue is applicable across the board. Thus, the parties have selected samples for the court's review.

As noted from the bench, the court appreciates the excellent quality of the work product and arguments presented by all attorneys in this case. As all parties can appreciate, the issues presented were not simple ones, and the issues are important to the ultimate outcome of this case. For their efforts, the court thanks counsel in clearly focusing the issues.

## WHOM THIS DECISION AFFECTS

This decision involves the allegations made against both Alliance Lumber, LLC, and Kay Construction, Inc.

## ARIZONA LAW

In a bankruptcy case, property rights are determined by reference to state law. *Butner v. United States*, 440 U.S. 48 (1979). Bankruptcy courts have "core" jurisdiction to hear and determine issues involving the extent, validity, and priority of liens against an estate. 28 U.S.C. § 157(b)(2)(K).

Mechanics' and materialmen's liens are creatures of statute ARIZ. REV. STAT. § 33-981, *et seq*. Such statutes have existed in Arizona since statehood. *See, e.g. Arizona Eastern R.R. Co. v. Globe Hardware Co.*, 14 Ariz. 397, 400, 129 P. 1104, 1105 (1913) ("The primary object of our lien law is to insure to the laborer and materialman the payment of their accounts, and incidentally to protect the owner against the filing of liens by such persons against his property for services and material rendered and furnished the original contract."); *see also* CIVIL CODE 1913, § 3639. They exist principally to protect mechanics, materialmen, and those who furnish labor or supplies to another's land, thereby enhancing its value, from the dangers of non-payment. *See United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, 484, 4 P.3d 1022, 1027 (App. 2000); *Hayward Lumber & Inv. Co. v. Graham*, 104 Ariz. 103, 111, 449 P.2d 31, 39 (1968). These rights are "jealously protected," *Wylie v. Douglas Lumber Co.*, 39 Ariz. 511, 515, 8 P.2d 256, 258 (1932), and when construing them the statutes must be liberally construed to effect their primary purpose. *See In re JWJ Contracting Co.*, 287 B.R. 501, 509-10 (9th Cir. BAP 2002) (construing Arizona's statutes), *aff'd*. 371 F.3d 1079 (9th Cir. 2004); *Ranch House Supply Corp. v. Van Slyke*, 91 Ariz. 177, 181, 370 P.2d 661, 664 (1962). While the statutes themselves appear, on the surface, to contain requirements which can be easily followed, the Arizona courts have held that substantial compliance with the statutes is sufficient to perfect a lien, provided that such compliance is not inconsistent with the legislative purpose. *See, e.g., Lewis v. Midway Lumber, Inc.*, 114 Ariz. 426, 431, 561 P.2d 740, 755 (App. 1977); *Columbia Group, Inc. v. Jackson*, 151 Ariz. 76, 79, 725 P.2d 1110, 1113 (1986); *MLM Constr. Co. v.*

*Pace Corp.*, 172 Ariz. 226, 229, 386 P.2d 439, 442 (App. 1992); *Peterman-Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank*, 2 Ariz. App. 321, 323, 408 P.2d 841, 843 (1966). While Arizona courts will, from time to time, describe the lien perfection process as one to be strictly followed, *see MLM Constr. Co.*, 172 Ariz. at 229, 836 P.2d at 442 (citing cases), the law's modern evolution has inevitably trended toward the substantial compliance model.

In addition to the protection of mechanics and materialmen, a secondary purpose of the law is to protect the property owner. *See, e.g., Arizona Gunite Builders, Inc. v. Continental Cas. Co.*, 105 Ariz. 99, 101, 459 P.2d 724, 726 (1969). The proper notification and recordation of a mechanic's lien serves to keep invalid or improper clouds on title from impairing an owner's rights to enjoy the benefits of ownership.

As for the specific procedure necessary for a lien claimant to perfect a lien, it must, within 20 days of first furnishing labor, professional services, materials, machinery, fixtures, or tools to the job site, prepare what is designated as a "preliminary twenty day notice" (hereinafter "preliminary 20-day notice") and serve it. ARIZ. REV. STAT. § 33-992.01. This statute was initially enacted in 1979, and has been amended five times since. Once the job is completed, the lien must be recorded within a specific period of time thereafter. ARIZ. REV. STAT. § 33-993.

Within each of these two statutes are contained numerous detailed requirements, some of which are at issue in the instant case. A copy of each of these statutes is included in the appendix to be filed.

<u>Appx. 1</u>    Challenged lien documents

<u>Appx. 2</u>    Statutes:

- Lien for labor, ARIZ. REV. STAT. § 33-981.
- Preliminary twenty day notice, ARIZ. REV. STAT. § 33-992.01
- Proof of mailing, ARIZ. REV. STAT. § 33-992.02
- Procedure to perfect lien, ARIZ. REV. STAT. § 33-993

## **CHALLENGES TO ALLIANCE LUMBER'S AND KAY CONSTRUCTION'S LIENS**

The current challenges to Alliance Lumber's and Kay Construction's liens fall into several categories:

    A. Failure to provide legal description in the preliminary 20-day notice or lien itself;

    B. Failure to attach contract;

    C. No affidavit of service of the preliminary 20-day notice was served on OSB; and

    D. Preliminary 20-day notices failed to comply with font size requirements of ARIZ. REV. STAT. § 33-992.01(D);

Alliance and Kay have also filed partial motions for summary judgment on the same issues. Each will be discussed in turn.

## CHALLENGES TO THE LIENS

  The and OSB Trustee seek partial summary judgment, as do Alliance and Kay, on the following issues:

    1. Did the legal description provided in the liens and preliminary 20-day notices satisfy ARIZ. REV. STAT. §§ 33-992.01(C)(4) and 33-993(A)(1)?

    2. Was either lien claimant required to attach a copy of a contract as required by ARIZ. REV. STAT. § 33-993(A)(3)?

### A. Failure to Provide Legal Description

  The Trustee (this term includes the challenges also made by OSB and WRI) has stated that Alliance Lumber's and Kay Construction's mechanic's liens and preliminary 20-day notices failed to provide proper legal descriptions.

  Copies of the exemplar (or perhaps the entire) notices are attached as exhibits to Alliance Lumber's and Kay Construction's "Separate Statement of Facts in Support of Their Motion for Partial Summary Judgment." Included within that pleading are also the affidavits of Rick Coleman (Ex. 3, Alliance), Pamela Cullen (Ex. 5, Kay), and Richard Brian (Ex. 10, Great American Title Agency, Inc.).

Mr. Coleman and Ms. Cullen state that neither the Debtors, nor either of the construction lenders noted thereon, responded to any inaccuracies found within the liens and preliminary 20-day notices. Therefore, the Trustee and the lenders have lost any right to defend on the issue of whether the property's description substantially complies with the statute's purpose of notification. ARIZ. REV. STAT. § 33-992.01(I) and (J). This is an appropriate finding, as a matter of law.

As a matter of fact, neither the Trustee nor the lenders (OSB and WRI) have countered the affidavit of Mr. Brian, or challenged the fact issue, and Mr. Brian concludes that, as a factual matter, the affected parcels can be located.

OSB's argument that these affidavits simply "create" an issue of fact is misplaced. Although discovery has, indeed, been suspended, the issue on which summary judgment is sought is not a "discoverable" item. Affidavits have been placed before the court on <u>specific</u> facts. It is up to a respondent to rebut those facts by presenting opposing facts on the same issue.

The Trustee's and OSB's partial motions for summary judgment challenged the facial validity of lien claims. One of the arguments was that the property descriptions were inadequate to convey notice. Both Alliance Lumber and Kay Construction rebutted that argument by affidavits, <u>and</u> asked that partial summary judgment be granted in their favor. It was then the responsibility of OSB, WRI, and the Trustee to <u>raise</u> a disputed fact opposing Alliance Lumber's and Kay Construction's points. FED. R. CIV. P. 56(e), made applicable to bankruptcy proceedings by FED. R. BANKR. P. 7056. Neither OSB, WRI, nor the Trustee have asserted that facts are unavailable to them, nor that they are aware of such facts in order to invoke FED. R. CIV. P. 56(f). Thus, simply "disputing" the sworn facts is insufficient. FED. R. CIV. P. 56(c) allows for opposing affidavits to be filed prior to the day of hearing. None were, nor have been since.

Therefore, Alliance Lumber's and Kay Construction's partial motions for summary judgment on the issue of the adequacy of the legal descriptions will be granted, and the Trustee, OSB, and WRI's partial motions for summary judgment on the same issue will be denied.

## B. The Trustee's "Bona-Fide Purchaser" Argument

The Trustee raises the contention that he is entitled to assert the "strong arm" powers of a bona-fide purchaser, pursuant to 11 U.S.C. § 545(2). However, this argument is a red herring, because even a bona-fide purchaser would have been on notice of a validly recorded mechanic's lien, as of the date of filing. That is exactly what Alliance Lumber and Kay Construction had. All of the Pinal County Recorder's time stamps, attached to the Alliance Lumber and Kay Construction Separate Statement of Facts, pre-date the bankruptcy filing of August 14, 2006.[1] Thus, the only conceivable argument to be made by a bona-fide purchaser is that the liens were somehow defective. Those shots have been taken, and for the reasons stated above, have missed the mark or rim-fired.

Thus, to the extent that the Trustee has chosen to wear the bona-fide purchaser hat on this battle, he may not prevail.

## C. Failure to Attach a Copy of the Contract (Kay Construction)

The next argument implicates ARIZ. REV. STAT. § 33-993(A)(3).

The Trustee asserts that Kay Construction failed to attach a copy of its contracts to its liens. Kay Construction countered with the affidavit of Pamela Cullen that it never had fully executed contracts with the Debtors. (Cullen Affidavit, paras. 4-7.)

What Kay Construction did do was attach copies of its various invoices, which support the existence of a valid oral contract. *Peterman-Donnelly Eng'rs & Contractors Corp. v. First Nat'l Bank*, 2 Ariz. App. 321, 323, 408 P.2d 841, 843 (1966)

Neither the Trustee, OSB, nor WRI responded with an exhibit or affidavit to the contrary.

Accordingly, Kay Construction is entitled to have its motion for partial summary judgment on this issue granted, and the Trustee's partial motion for summary judgment on the same issue will be denied.

---

[1] The attached liens bear recording dates of August 2, 2006 and August 7, 2006.

8

## D. Font Size

OSB maintains that Alliance Lumber's and Kay Construction's preliminary 20-day notices failed to conform to the statutory requirement that certain required warning language "be in type at least as large as the largest type otherwise on the document." ARIZ. REV. STAT. § 33-992.01(D).

An unaided view of the preliminary 20-day notices in this case reveals actual compliance. The font size is as large as the largest pre-printed type font on the form. Even with the aid of a magnifying glass and a ruler, the font appears to be the same throughout the document. It is the use of upper and lower case letters that creates an optical illusion to the contrary.

The court incorporates the reasoning set forth in the Del Martenson Memorandum Decision, as the points made by the court in that ruling are exactly the same here.

The size of the type in the preliminary 20-day notice satisfies the intent, spirit, and letter (literally and figuratively) of the law.

Partial summary judgment on this issue shall be entered in favor of Alliance Lumber and Kay Construction, while the Trustee's and OSB's motions for partial summary judgment on this same issue will be denied.

## E. Preliminary 20-day Notices Not Served on OSB (Alliance)

OSB contends that Alliance Lumber failed to serve the preliminary 20-day notice upon it. This argument fails the summary judgment test for several reasons.

First, OSB has been or likely will be paid its entire debt as a secured creditor. Ample funds remain in the Trustee's account to accomplish this. 11 U.S.C. § 506. Therefore, OSB has no pecuniary interest in these lien claim issues. *See, e.g., Fondiller v. Robertson (In re Fondiller)*, 707 F.2d 441, 442 (9th Cir. 1983). It should therefore not be incurring unnecessary fees and costs at the expense of others. Its legal standing is tenuous.

Second, OSB has no litigation outstanding by which any party has yet formally challenged its lien, with the exception of the discrete parcel of land upon which RDC contends that it holds a senior lien claim.

Third, OSB has acknowledged that it has misplaced, lost, or destroyed any such documents that might have been sent to it, such as the instant preliminary 20-day notice. Therefore, it cannot claim that it never received notice. It cannot prove that fact one way or the other.

Fourth, OSB has apparently neglected to monitor its multi-million dollar loan, even though its loan documents impose a duty of cooperation and information-sharing between it and its borrowers, the Debtors. Thus, again, OSB cannot definitely state whether it did or did not know of the Alliance Lumber's lien.

Fifth, OSB has provided no affidavits of non-receipt. Nor, without paperwork in its files, could it. Even if OSB were to make such a claim, Alliance Lumber could attempt to rebut it by affidavit. ARIZ. REV. STAT. § 33-992.02.

These factual issues aside, though, brings the inquiry to its real point--what is the true legislative purpose of ARIZ. REV. STAT. § 33-992.01(B)?

The statute requires a mechanic or materialman, in order to eventually perfect a statutory lien against another's property, for whose benefit he has labored and/or whose property is otherwise improved, to serve preliminary notices within 20 days after beginning work. ARIZ. REV. STAT. § 33-992.01(C). The preliminary 20-day notice must contain certain information, and be served in some manner upon the owner, reputed owner, original contractor or reputed contractor, the construction lender, if any, or reputed construction lender, if any, and the person with whom the claimant has contracted. ARIZ. REV. STAT. § 33-992.01(B). "Construction lender" includes the beneficiary under a deed of trust, such as OSB, whose loan has been used to defray the construction costs. ARIZ. REV. STAT. § 33-992.01(A)(1).

Now comes the rub. If there are inaccuracies contained within the preliminary 20-day notice, the "owner or other interested party" which did receive the preliminary 20-day notice is required to inform the lien claimant with "all information necessary to correct any inaccuracies in the notice . . . or lose as a defense any inaccuracy. . . ." ARIZ. REV. STAT. § 33-992.01(D).

Sections I and J of the same statute impose a duty on those receiving the information to communicate with the lien claimant. But if, as here, the owner ignores this duty, and if the claimant has listed the wrong construction lender, what is the legal effect? According to OSB, the lien which is eventually recorded is invalid as to it. However, there is no statute to support OSB's argument on the effect of such an omission. When one considers that the purpose of the statute is to protect the lien rights of mechanics and materialmen, then what legislative purpose is served by setting traps for giving notice to those with whom the claimant has never dealt, who may be many states away, be faceless on the project, and whose owner (who rightly did receive notice) ignores the duty to convey to the lien claimant the accurate information? This statute was not written to benefit construction lenders. It was written to benefit lien claimants and owners. No Arizona case or statute has been written to deny a lien claimant of his/her/its lawful rights to the substantial benefit of a lender, in a circumstance similar to that presented here.

In the instant case, Alliance Lumber made a good faith effort to list the construction lender which it believed was the proper party, and so noted it on the preliminary 20-day notice. It listed "W.R.I. Investments III LLC." Even if it is wrong (about which no one advised it), it did its best to comply with the statute. The failure of others in their duties to keep the lien claimant properly advised, under the statute, does not have the legal effect of invalidating an otherwise effective mechanic's and materialmen's lien claim.

Here, Alliance Lumber did what the statute required of it. Neither the owner, nor WRI, apparently made any effort to correct the inaccuracies concerning who the construction lender was, despite the statutory duty to do so. Now, OSB seeks to benefit from another's failure to do what it was required to do. Considering the statute's overall purpose, this court agrees with the reasoning of California's Appellate court, in *Industrial Asphalt, Inc. v. Garrett Corp.* 180 Cal.App. 3d, 1001, 226 Cal. Rptr. 17 (1986). There, the affected <u>owner</u> was properly served with a preliminary twenty day notice, but the bankruptcy <u>contractor</u> to whom the claimant has supplied the material was not. The court held the lien claimant's failure to serve the contractor did not invalidate the lien. It stated:

> We see no reason, <u>in the absence of prejudice</u> to the property owner ... why the subcontractor's failure to serve notice upon an original contractor should render unenforceable a lien against an owner who *did* receive proper notice.

*Id.* 180 Cal. at 1007, 226 Cal. Rptr. at 20 (emphasis supplied).

The similarities and reasoning of that case weighs against OSB. It is not entitled to invalidate a lien of a mechanic or materialman who complied with the statute. OSB can look to its borrower for satisfaction.

It is evident that resolution of this issue is a mixed question of fact and law, involving, among other things, proof of actual prejudice.

OSB's motion on this point will be denied.

## **RULING**

A separate order will be issued simultaneously with the issuance of this Memorandum Decision. FED. R. BANKR. P. 9021.

DATED this 17 day of May, 2007.

JAMES M. MARLAR
UNITED STATES BANKRUPTCY JUDGE