# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TURNER-DUNN HOMES, INC., and others,<br><br>                Debtors.<br><br>BCI BEBOUT CONCRETE, INC.,<br><br>                Plaintiff,<br><br>vs.<br><br>TURNER-DUNN HOMES, INC., et al., and John Does 1-10,<br><br>                Defendants.<br><br>ROBERT P. ABELE, Chapter 11 Trustee,<br><br>                Third-Party Plaintiff,<br><br>vs.<br><br>SONORAN CONCRETE, LLC, an Arizona limited liability company; GALE CONTRACTOR SERVICES, a Florida corporation; CHAS ROBERTS AIR CONDITIONING, INC., an Arizona corporation; DEL MARTENSON DEVELOPMENT CORP., an Arizona corporation; TRUSSWAY, INC. WEST, an Arizona corporation; TRIPLE S FENCE CO., an Arizona corporation; RIGGS PLUMBING, LLC, an Arizona limited liability company; ALLIANCE LUMBER, LLC, an Arizona limited liability company; KAY CONSTRUCTION, INC., an Arizona corporation, PEAK CONSTRUCTION, INC., an Arizona corporation; DIVERSIFIED ROOFING CORP., an Arizona corporation; INTEGRATED STUCCO, INC., an Arizona corporation; MITCHELL ELECTRIC CO., INC., an Arizona corporation; A COMPANY PORTABLE RESTROOMS INC., an | Chapter 11<br><br>Case No. 4-06-bk-00961-JMM<br><br>(Jointly Administered With Case Nos.: 4-06-bk-00962-JMM; 4-06-bk-00963-JMM; 4-06-bk-00964-JMM; 4-06-bk-00965-JMM)<br><br>Adversary No. 4-06-ap-00106-JMM<br><br>**MEMORANDUM DECISION RE:**<br><br>**LIEN CLAIMANT**<br><br>**RDC CONSTRUCTION, INC.** |

| | |
|---|---|
| 1 | Idaho corporation; JORDAN COMPANY; PACIFIC ) |
|   | POOLS AND SPAS, LLC, an Arizona limited ) |
| 2 | liability company; MARICOPA MEADOWS ) |
|   | HOMEOWNERS ASSOCIATION, an Arizona ) |

Idaho corporation; JORDAN COMPANY; PACIFIC POOLS AND SPAS, LLC, an Arizona limited liability company; MARICOPA MEADOWS HOMEOWNERS ASSOCIATION, an Arizona corporation; SANDVICK EQUIPMENT & SUPPLY CO.; ESCO ELECTRIC WHOLESALE, INC.; RDC CONSTRUCTION, INC., an Arizona corporation; DAYSPRING DEVELOPMENT, INC., an Arizona corporation; OUTDOOR ENVIRONMENTAL SYSTEMS, INC aka OES, INC. dba RAINDANCE SYSTEMS, an Arizona corporation; OHIO SAVINGS BANK, a federal savings bank; WRI INVESTMENTS III, LLC, a Washington limited liability company; ANY UNKNOWN PARTIES IN POSSESSION; UNKNOWN HEIRS AND DEVISEES OF ANY OF THE FOREGOING WHO ARE DECEASED; and ABC ENTITIES 1-100,

     Third- Party Defendants.

On August 2, 2007, this court held a trial on the remaining issues concerning the claim of RDC Construction, Inc. ("RDC"). RDC was represented by Steven M. Cox; the chapter 11 Trustee was represented by Margaret A. Gillespie; Ohio Savings Bank ("OSB") was represented by Ari Ramras.

This decision finally determines all remaining issues affecting lien claimant RDC, and the amounts owed to it relative to what the parties describe, in shorthand fashion, as "Parcel FF" (Parcel map, RDC Ex. 1). The chapter 11 Trustee also has an interest in the outcome of this litigation on behalf of other interested creditors. Therefore, the parties with standing to the instant dispute have all appeared and been heard, to wit: OSB, RDC, and the Trustee.

A judgment may now be finally entered as to such parties, concluding this aspect of the adversary proceeding pursuant to FED R. BANKR. P. 7054 and FED. R. CIV. P. 54(b).

As a final judgment, then, as to these parties on the issues determined, any such judgment shall be a final one, subject to appeal pursuant to FED. R. BANKR. P. 8001 *et seq.*

## **BACKGROUND**

Previously, in a partial summary judgment decision filed May 18, 2007, this court decided that RDC's recorded mechanics' and materialmen's lien held a legally prior position to that of OSB.

2

Case 4:06-ap-00106-JMM   Doc 366   Filed 09/04/07   Entered 09/05/07 12:22:07   Desc
Main Document    Page 2 of 15

What remained for trial between the chapter 11 Trustee, OSB, and RDC, then, were the following issues:

1. Did RDC release or fail to release all or any part of its recorded lien?
2. What portion of RDC's unpaid balance is secured, and what portion is unsecured?
3. How are payments and credits on the RDC debt to be applied and accounted for?

On August 2, 2007, these parties presented documentary and oral evidence on these issues. At the conclusion of the case, the parties were given until August 23, 2007 within which to file additional legal briefs. Those briefs have now been filed and considered.

The court now issues this decision, explaining its conclusions.

## **FACTS**

From the evidence presented, the court finds the following facts:

1. On or about November 7, 2005, Turner-Dunn Acquisitions, L.L.C., dba Turner Dunn Homes (Turner Dunn), as owner, and RDC, as contractor, entered into an agreement wherein RDC agreed to furnish certain infrastructure to the real property known as Parcel FF of the McCartney Center, a subdivision in Casa Grande, Arizona ("Parcel FF"), for a contract sum of $1,893,675.20. (JPTS, Undisputed Fact No. 1; Trustee Ex. 1.)

2. On or about November 2, 2005, RDC commenced construction work on Parcel FF. (JPTS, Undisputed Fact No. 2).

3. RDC recorded its preliminary notice of its mechanics' and materialmen's lien as of November 22, 2005.

4. On November 30, 2005, RDC sent its first invoice for $245,885.30 to Turner Dunn (Trustee Ex. 2; RDC Ex. 2). Thus, the total due to RDC as of November 30, 2005 was $245,885.30.[1]

---

[1] For purposes of this decision, however, the 10% retention amounts will not be discussed.

3

5. On December 31, 2005, RDC sent its second invoice, for work completed between November 30 and December 31, 2005, for $656,146.89 (Trustee Ex. 3; RDC Ex. 2).

6. On January 31, 2006, by a third invoice, RDC billed Turner Dunn, for work completed during January, the sum of $75,177.00 (Trustee Ex. 4; RDC Ex. 2).

7. On February 1, 2006, concerned with non-payment, RDC's attorneys threatened Turner Dunn with foreclosure of RDC's mechanic's lien (RDC Ex. 3).

8. On March 8, 2006, Turner Dunn paid RDC $100,000 (RDC Ex. 2). RDC applied the entire $100,000 against the Turner Dunn debt (Trustee Ex. 5 and 17; handwritten Gershenfeld notation).

9. On March 20, 2006, Turner Dunn made another payment that was credited to the account, of $93,807.76 (RDC Ex. 2; Trustee Ex. 17).

10. On March 31, 2006, RDC billed Turner Dunn, for work completed between February 1 and March 31, 2006, the sum of $292,344.41 (Trustee Ex. 5; RDC Ex. 2).

11. The March 31, 2006 RDC invoice (Trustee Ex. 2) does not break down the work by date or month, but provides only a 60-day total for February and March, 2006.

12. By March 31, 2006, RDC was becoming more concerned with whether, and how, Turner Dunn would pay it for the unpaid invoices to date on Parcel FF.

13. From its end, Turner Dunn had still not closed with its lender, OSB, as to its Parcel FF acquisition and development loans, and was short of working capital with which to pay RDC.

14. It was with this background then, that Turner Dunn's principals, and RDC's principals, Rob Anderson and George Anderson, met and discussed the matter of RDC's unpaid invoices. During those conversations, Turner Dunn proposed the following arrangement: If RDC would release its lien for $778,377.90 through February 28, 2006, then Turner Dunn would have sufficient "equity" in the property for its lender, OSB, to obtain comfort in funding the loans. Turner Dunn then agreed to pay RDC as money became available, through future home sales' closings (Trustee Ex. 11; RDC Ex. 9). RDC never expressly agreed to this payment arrangement.

15. On April 3, 2006, RDC agreed to release a portion of its lien claim, in the amount of $778,377.90, against its invoiced totals through February 28, 2006 (Trustee Ex. 10; JPTS Undisputed Fact No. 3).

4

Case 4:06-ap-00106-JMM    Doc 366    Filed 09/04/07    Entered 09/05/07 12:22:07    Desc
Main Document    Page 4 of 15

16. The lien release form acknowledged that RDC "has been paid and has received a release payment in the sum of $778,377.90 . . . and does hereby release ... any claim for payment . . . ." (Trustee Ex. 10). The document further stated that "[t]his document waives rights unconditionally and states that you [RDC] has [sic] been paid for giving up those rights. This Document is enforceable against you if you sign it, even if you have not been paid." (Trustee Ex. 10; JPTS Undisputed Fact No. 4.)

17. With RDC's officers' and principals' knowledge, and upon their instruction, Patricia Gershenfeld executed the "Unconditional Waiver and Release on Progress Payment" form, on April 3, 2006.

18. In early April, 2006, when RDC made the decision to release $778,377.90 of RDC's lien, that decision was voluntary and the risks were known. Although RDC had an expectation and hope that Turner Dunn would pay it on the now-released lien balance, it was not expecting immediate payment. RDC's principals' intentions were to assist Turner Dunn in obtaining its financing from OSB, which could not otherwise have been funded. The parties' (RDC and Turner Dunn) intention as to how the released sum might be paid was the subject of discussion, but no firm agreement was reached (see Trustee Ex. 11).

19. OSB relied on the $778,377.90 lien release (Trustee Ex. 10) in order to fund the April 17, 2006 loan. The RDC release gave Turner Dunn more equity in OSB's underlying collateral, and thus enhanced and elevated OSB's lien to the position formerly enjoyed by RDC. When RDC released its lien in the amount of $778,377.90, it knew that OSB's deed of trust would then obtain priority, and occupy RDC's formerly secured position to the extent of $778,377.90.

20. OSB was unaware of any contrary intention RDC might have secretly harbored, in continuing to claim any lien or amount due for this period (November 2005 - February 2006), and fully relied on the lien release (Trustee Ex. 10) in order to proceed with its funding.

21. The lien release (Trustee Ex. 10) was signed by an authorized RDC agent on April 3, 2006. RDC knew of, and accepted the risk, the adverse legal consequences associated with signing such a document, which included the very real legal possibility that it had agreed to forego payment. RDC made no formal book entries reflecting the release or constructive payment received, due to signing the release.

22 OSB funded its loan to Turner Dunn on April 17, 2006 (Trustee Ex. 16).

5

23. Between April 17 and 25, RDC received and applied $400,000 in payments against the Turner Dunn billings (RDC Ex. 2; Trustee Ex. 17). These were the last payments made against the Turner Dunn account.

24. On May 31, 2006, RDC billed Turner Dunn another $73,474.40 (RDC Ex. 2).

25. On June 30, 2006,[2] for work performed between June 1 and 30, 2006, RDC billed Turner Dunn $29,553.39 (Trustee Ex. 7; RDC Ex. 2).

26. Through July 25, 2006 (for July 1-25), Turner Dunn was billed another $10,400.00.

27. RDC did no further work on Parcel FF after July 25, 2006.

28. Turner Dunn filed a voluntary chapter 11 bankruptcy case on August 14, 2006.

29. RDC filed a secured claim in the Turner Dunn bankruptcy case, based upon its mechanics' and materialmen's lien, for $819,459.38 (Trustee Ex. 19). RDC calculated this figure in the following manner:

| | | |
|---|---|---|
| Total invoices | 1,382,981.39 | (JPTS, Undisputed Fact No. 5) |
| Less: Payments/Credits | (563,922.01) | |
| Balance | 819,059.38 | |

(RDC Ex. 2.) It then added $400 as a "foreclosure cost" to arrive at its claimed secured amount of $819,459.38 (Trustee Ex. 19).

29. The parties have agreed that RDC was actually paid $593,807.76 (JPTS, Undisputed Fact No. 6).

30. Except for a cryptic handwritten notation on a copy of the March 31, 2006 Monthly Progress Invoice (Trustee Ex. 5), any reference to the lien release and payment of $778,377.90 is nowhere mentioned in RDC's accountings.

---

[2] RDC's billing states June 31, 2006 (RDC Ex. 2).

6

# DISCUSSION

The entirety of the issues in this matter are, in their essence, relatively simple to resolve, using basic legal fundamentals.

RDC maintains that it is a secured creditor owed $819,459.38, according to its proof of claim (Trustee Ex. 19). For such amount, RDC filed a mechanics' and materialmens' lien against Parcel FF (Trustee Ex. 19). In arriving at this figure, RDC constructs a very simple accounting. It simply adds up all invoices, subtracts all payments, and arrives at the balance, to wit:

| | |
|---|---|
| Gross invoice amount | $1,382,981.39 |
| Less payments credited against secured balance | (563,922.01) |
| Balance Due and claimed secured | $819,059.38 |

(RDC Ex. 2). It then added $400 to this figure, for "costs," in order to arrive at its claimed amount.

In reality, however, the true picture is murkier. RDC's accounting nowhere takes into account its unconditional release of lien, in which it acknowledged that it had been "paid." Such a statement was signed in order to induce the unsuspecting lender, OSB, into disbursing loans to Turner Dunn.

Arizona's mechanics' and materialmen's lien statutes are remedial and to be liberally construed to effect their primary purpose of protecting laborers and materialmen by providing them with a lien on the property for the payment of their accounts. *United Metro Materials, Inc. v. Pena Blanca Props., L.L.C.*, 197 Ariz. 479, 484, 4 P.3d 1022, 1027 (App. 2000). Such liens can also be waived if the materialman executes a waiver and release as provided in ARIZ. REV. STAT. § 33-1008. As explained by the Arizona Court of Appeals:

> According to section 33-1008, a waiver and release may be conditional or unconditional depending on whether the materialman has received payment for the materials. As provided in subsection (D)(1), a "conditional waiver and release" is appropriate when the claimant is required to execute a waiver and release in order to induce payment, and it becomes effective only after payment is received. In comparison, an "unconditional waiver and release" should not be executed unless the materialman has been

7

paid for what is being released because A.R.S. § 33-1008(D)(2) provides that an unconditional release must contain the following language:

> This document waives rights unconditionally and states that you have been paid for giving up those rights. This document is enforceable against you if you sign it, even if you have not been paid. If you have not been paid, use a conditional release form.

*United Metro Materials*, 197 Ariz. at 484, 4 P.3d at 1027.

The release signed by RDC followed the statutory format and contained the requisite language for an unconditional waiver and release, stating that RDC had been "paid," and including the warning that "[t]his Document is enforceable against you if you sign it, even if you have not been paid."

RDC's statement that it had been paid the full lien-release amount was signed in order to induce the unsuspecting lender, OSB, into disbursing loans to Turner Dunn. A valid waiver and release creates an estoppel against an unpaid claimant. *See* ARIZ. REV. STAT. § 33-1008(B); *see also Valencia Energy Co. v. Ariz. Dept. of Revenue*, 191 Ariz. 565, 959 P.2d 1256 (1998) ("The three elements of equitable estoppel are traditionally stated as: (1) the party to be estopped commits acts inconsistent with a position it later adopts; (2) reliance by the other party; and (3) injury to the latter resulting from the former's repudiation of its prior conduct.").

At the same time, RDC acknowledged, by signing such document, that Turner Dunn had no further rights against RDC for the released sum. The Trustee succeeds to the rights of Turner Dunn, and additionally stands in the shoes of a hypothetical lien creditor for the benefit of the unsecured creditors. 11 U.S.C. § 544.

The entire controversy in this case stems from two questions: (1) Did RDC properly account for all payments actually or constructively received, and (2) did it also properly give credit for the combined unconditional lien release and statement of payment which it gave to Turner Dunn on April 3, 2006? Refined to its essence, the answer to both questions is "no."

RDC never credited, or anywhere reflected on its books, the $778,377.90 lien release which RDC's authorized agent, Patricia Gershenfeld, signed on April 3, 2006. That document, entitled "Unconditional Waiver and Release on Progress Payment," stated that RDC "has been <u>paid</u> and <u>has received</u>

8

Case 4:06-ap-00106-JMM    Doc 366    Filed 09/04/07    Entered 09/05/07 12:22:07    Desc
Main Document    Page 8 of 15

a progress <u>payment</u> in the sum of $778,377.90" (Trustee Ex. 10) (emphasis supplied). However, RDC's books nowhere reflect a credit in this amount.

Instead, according to RDC, it credited $193,807.76 (see RDC's handwritten notation on Trustee Ex. 5), and then transferred the sum of $584,570.14 to another ledger (never produced), which RDC called "Note TD." But RDC's own actual ledgers nowhere reference this creative but silent bookkeeping (see RDC Ex. 2). Neither the $778,377.90 nor the $584,570.14 accountings appear anywhere, and simply disappear into thin air, apparently residing in a place known only to RDC, and perhaps Turner Dunn. No exhibit in this case, except the handwritten notation on Trustee's Ex. 5, places this significant "agreement" between RDC and Turner Dunn in writing. Whatever the understanding between RDC and Turner Dunn, it was both silent and inconsistent with RDC's bookkeeping.

Because RDC simply transferred, to a secret or unknown set of books, the sum of $584,570.14, it failed to credit, or account for, that sum against its balance as of April 3, 2006. RDC's own books nowhere mention it. (See RDC Ex. 2). RDC's oral explanations were similarly unclear and vague.

Also less than illuminating is how RDC credited, as part of the April <u>3</u>, 2006 release, the sum of $193,807.76 (Trustee Ex. 5), but booked them as payments received on March 8, and 20, 2006. However, if the release and payment form (Trustee Ex. 10) was not signed until April 3, 2006, and the $193,807.76 was not actually paid until the April 17, 2006 loan funded, how did payments attributed to such release (Trustee Ex. 5) find their way onto the earlier March books of RDC as a credit made weeks before the release was executed? RDC's bookkeeping methods were unorthodox in the extreme.

The RDC books and ledgers are inconsistent and confusing. The unorthodox accounting methods employed by RDC were disjointed and not satisfactorily explained by RDC. In short, RDC's adjusted books and records do not accurately reflect how payments made should be applied.

RDC filed a secured proof of claim for $819,459.38 (Trustee Ex. 19). It arrived at that figure by subtracting actual payments received (compare JPTS with Trustee Ex. 5), from its total invoiced amounts. However, RDC simply ignored, its own statement contained in the unconditional waiver, that it had been <u>paid</u> and had <u>received</u> $778,377.90 (Trustee Ex. 10).

9

RDC's business decision to give OSB and Turner Dunn its unconditional statement that it had received $778,377.90 cannot now be unwound to the disadvantage of the junior secured creditor (OSB), which relied on that representation and that document to fund the loan to Turner Dunn on April 17, 2006. Nor can RDC change its unilateral decision to hold out to the world that it had been paid $778,377.90 to the detriment of the unsecured creditors represented now by the Trustee. 11 U.S.C. § 544.

Therefore, after filtering out all of the less than credible "creative" bookkeeping, and by using credible accounting methods, RDC's true balance on the Turner Dunn account must be calculated in the following manner.

| | | |
|---|---:|---|
| By March 8, 2006, the total outstanding billings were: | $977,310.19 | (RDC Ex. 2) |
| On March 8 and 20 credits were made of: | (193,807.76) | (RDC Ex. 2, Trustee Ex. 5; JPTS) |
| March 20 balance | 783,502.43 | |
| March 31 billing | 292,344.41 | (RDC Ex. 2) |
| March 31 balance | 1,075,846.84 | |
| April 3 lien release and stated payment | (778,377.90) | (Trustee Ex. 10) |
| April 3 balance | 297,546.94 | |
| April 17 - 25 payments | (400,000.00) | (RDC Ex. 2) |
| April 25 credit balance | (102,453.06) | |
| May 31 billing | 73,474.40 | (RDC Ex. 2) |
| May 31 credit balance | (28,978.66) | |
| June 31 billing | 29,553.39 | (RDC Ex. 2) |
| June 31 balance | 574.73 | |
| July 25 billing | 10,400.00 | |
| July 25 balance | $10,974.73 | |

RDC has a secured mechanics' lien claim against parcel FF, which is senior to OSB, of $10,974.73. Payment of that sum will compensate RDC for its remaining debt in this case.

This result is consistent with the equities inherent in the case. By making the choice to hold

10

out to all others that it had been "paid" the sum of $778,377.90, but then failing to book it in any way, RDC has not dealt fairly with all other interested parties. To now hold RDC to the result that it held out to others as being accurate is fair, equitable, and just.

RDC's defense that it had no other choice but to execute the $778,377.90 unconditional lien release, upon a signed acknowledgment that it had been paid such amount, is not credible. The argument of RDC that the release was void because somehow it was "forced" to sign it does not square with the testimony. Everyone involved in the decision to execute the release knew its most severe consequences. The document's language as to the consequence of signing the release was crystal clear. The document was only one page and not complex. Portions were entirely in capital letters. If a laborer or materialman uses an unconditional lien waiver form that comports with the statute, it is valid and the court must give it effect, even if payment has not actually been made at the time of execution. *See In re JWJ Contracting Co.*, 287 B.R. 501, 510 (9th Cir. BAP 2002) (unconditional waiver was effective immediately even though payment was initially made with an NSF check), *aff'd*, 371 F.3d 1079 (9th Cir. 2004); *see also* ARIZ. REV. STAT. § 33-1008(D)(2).

When Turner Dunn filed bankruptcy, leaving many millions of dollars owed to innocent subcontractors and OSB, it is now disingenuous for RDC to attempt to hold itself out as a similar victim. RDC knowingly created its now dire situation. Had Turner Dunn succeeded in business, it is likely that RDC's efforts to assist Turner Dunn and defer payment would have been rewarded. But when Turner Dunn was unable to turn the corner, or, as Mr. Dunn noted, when Turner Dunn could not "right the ship," RDC cannot now pretend to be an unknowing pawn, entitled to be paid, on a par with, or on a level senior to, all others.

The Trustee's and OSB's arguments and legal positions concerning RDC's estoppel and waiver are meritorious and, under all of the circumstances of this case, are both justified and consistent with applicable law.

11

## CONCLUSIONS OF LAW

The court's conclusions, therefore, are:

1. RDC holds a secured claim, senior to that of OSB, of $10,974.73;
2. RDC may be paid said sum from the Parcel FF sale proceeds, in full satisfaction of its claim;
3. RDC's secured claim for $819,459.38 is disallowed, except to the extent set forth in paragraphs 1 and 2; and
4. OSB may be paid, on its lien claim, from the remaining sales proceeds of Parcel FF, a sum up to, but not exceeding, the value of Parcel FF, and the amounts owed on the Parcel FF secured loans.

## RULING

Thus, the judgment of the court on the issues involved in this portion of the case will be:

1. RDC is a secured creditor, with a mechanics' lien superior to OSB and the Trustee in the amount of $10,974.73;
2. OSB's lien is next in priority, up to the value of Parcel FF, and the proper balance due OSB on the secured loans specific to that parcel; and
3. RDC's claim is disallowed, except as set forth above.

1  The Trustee shall prepare a form of judgment herein, and lodge it with the court within 15
2  days. Said judgment shall include FED. R. CIV. P. 54(b) language, as the court intends to finally conclude
3  this aspect of the adversary proceeding.

5  DATED: September 4, 2007.

   JAMES M. MARLAR
   UNITED STATES BANKRUPTCY JUDGE

COPIES served as indicated below on the date signed above:

| | |
|---|---|
| Adam B. Nach, Allison M. Lauritson and Lisa Banen<br>Lane & Nach, P.C.<br>2025 N. Third St., #157<br>Phoenix, AZ 85004<br>Email: adam.nach@azbar.org<br>Email: allison.lauritson@lane-nach.com<br>Email: lisa.banen@lane-nach.com<br>Attorneys for A Company Portable Restrooms | Daniel P. Collins and Margaret A. Gillespie<br>Collins, May, Potenza, Baran & Gillespie<br>2210 Chase Tower, 201 N. Central Ave.<br>Phoenix, AZ 85004-0022<br>Email: dcollins@cmpbglaw.com<br>Email: mgillespie@cmpbglaw.com<br>Attorneys for Robert P. Abele, Trustee |
| William J. Simon<br>Tiffany & Bosco<br>2525 E Camelback Rd., #300<br>Phoenix, AZ 85016-4237<br>Email: jal@tblaw.com<br>Attorneys for Alliance Lumber and Kay Construction | Don C. Fletcher<br>The Cavanagh Law Firm<br>1850 N. Central Ave., #2400<br>Phoenix, AZ 85004<br>Email: dfletcher@cavanaghlaw.com<br>Attorneys for Plaintiff BCI Bebout Concrete |
| James F. Wees<br>Wees Law Firm<br>2600 N. Central Ave., # 635<br>Phoenix, AZ 85004<br>Email: james@weeslawfirm.com<br>Attorneys for Chas Roberts Air Conditioning | Carolyn J. Johnsen<br>Jennings, Strouss & Salmon, P.L.C.<br>The Collier Center, 11th Floor<br>201 E. Washington St.<br>Phoenix, AZ 85004-2385<br>Email: cjjohnsen@jsslaw.com<br>Attorneys for Del Martenson Development |
| Michael C. Zukowski and Ernest Collins, Jr.<br>Beaugureau, Zukowski & Hancock, P.C.<br>2111 E. Highland Ave., #255<br>Phoenix, AZ 85016<br>Email: mzukowski@bzhlaw.com<br>Email: ecollins@bzhlaw.com<br>Attorneys for Diversified Roofing | Rodger A. Golston<br>Golston Keister & Steen, P.C.<br>4500 S. Lakeshore Dr., #570<br>Tempe, AZ 85282-7057<br>Email: rag@gkshlaw.com<br>Attorneys for Gale Contractor Services |
| William Novotny and Robert A. Shull<br>Mariscal, Weeks, McIntyre & Friedlander<br>2901 N. Central Ave., #200<br>Phoenix, AZ 85012-2705<br>Email: william.novotny@mwmf.com<br>Email: rob.shull@mwmf.com<br>Attorneys for Integrated Stucco | John D. Parker, II<br>Parker Law Firm, PLC<br>141 E. Palm Ln., #111<br>Phoenix, AZ 85004<br>Email: jparker@ptlaw.net<br>Attorneys for Jordan Company |
| James H. Hazlewood<br>Carpenter, Hazlewood, Delgado & Wood PLC<br>1400 E. Southern Ave., #640<br>Tempe, AZ 85282<br>Email james.hazlewood@carpenterhazlewood.com<br>Attorneys for Maricopa Meadows Homeowners Association | Robert P. Harris<br>Quarles & Brady LLP<br>Two N. Central Ave., #200<br>Phoenix, AZ 85004<br>Email: rharris@quarles.com<br>Attorneys for Mitchell Electric |

| | |
|---|---|
| Joshua W. Wolfshohl<br>Porter & Hedges LLP<br>1000 Main St., 36th Floor<br>Houston, TX 77002<br>Email: jwolfshohl@porterhedges.com<br>Attorneys for Mitchell Electric | Howard C. Meyers<br>Burch & Cracchiolo, P.A.<br>702 E. Osborn, #200<br>Phoenix, AZ 85014<br>Email: hmeyers@bcattorneys.com<br>Attorneys for New Century Holdings |
| Gregory P. Gillis<br>Jaburg & Wilk PC<br>14500 N. Northsight Blvd.., #116<br>Scottsdale, AZ 85260<br>Email: gpg@jaburgwilk.com<br>Attorneys for Pacific Pools and Spas | Steven M. Cox<br>Waterfall Economidis Caldwell Hanshaw & Villamana, P.C.<br>5210 E. Williams Cir., #800<br>Tucson, AZ 85711<br>Email smcox@wechv.com<br>Attorneys for RDC Construction |
| Christopher J. Berry<br>Berry and Associates<br>101 N. First Ave., #1800<br>Phoenix, AZ 85003<br>Email: cberry@berryandassoc.com<br>Attorneys for Riggs Plumbing | |
| Ryan Christopher Skiver<br>Britt Law Group PC<br>2525 E. Camelback Rd., #900<br>Phoenix, AZ 85016<br>Email: rskiver@brittlawgroup.com<br>Attorneys for Triple S Fence Co. | Gary V. Ringler<br>7303 W. Boston St.<br>Chandler, AZ 85226<br>Email: garyvringler@earthlink.net<br>Attorneys for Trussway, Inc. West |
| Steve A. McQueen<br>Pagel, Davis & Hill, P.C.<br>1415 Louisiana, 22nd Floor<br>Houston, TX 77002<br>Email: dam@pdhlaw.com<br>Attorneys for Trussway, Inc. West | Ari Ramras<br>Ramras Law Office, P.C.<br>5060 N. 40th St., #103<br>Phoenix, AZ 85018<br>Email ari@ramraslaw.com<br>Attorneys for WRI Investments and Ohio Savings Bank |
| Joseph E. Cotterman and Jaclyn D. Malka<br>Gallagher & Kennedy, P.A.<br>2575 E. Camelback Rd.<br>Phoenix, AZ 85016-9225<br>Email: jec@gknet.com<br>Email jaclyn.malka@gknet.com<br>Attorneys for WRI Investments, Ohio Savings Bank | Scott B. Cohen<br>Sacks Tierney P.A.<br>4250 N. Drinkwater Blvd., 4th Flr.<br>Scottsdale, AZ 85251<br>Email: Scott.Cohen@SacksTierney.com<br>Attorneys for WRI Investments III |
| Kevin J. Blakley<br>Gammage & Burnham, P.L.C.<br>Two N. Central Ave., 18th Floor<br>Phoenix, AZ 85004<br>Email: kblakley@gblaw.com<br>Attorneys for Ohio Savings Bank | Office of the United States Trustee<br>230 North First Avenue, Suite 204<br>Phoenix, AZ 85003-1706<br>U.S. Mail |

By /s/ M. B. Thompson
    Judicial Assistant

15

Case 4:06-ap-00106-JMM    Doc 366    Filed 09/04/07    Entered 09/05/07 12:22:07    Desc
Main Document    Page 15 of 15